## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK COLWELL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK, <br><br> Defendants, | Case No. 1:21-cv-06637 <br> Judge John F. Kness <br> Magistrate Judge Jeffrey T. Gilbert <br><br> **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Mark Colwell ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Exicure, Inc. ("Exicure" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Exicure; and (c) review of other publicly available information concerning Exicure. This Amended Complaint is filed pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Exicure securities between January 7, 2021 and December 10, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Exicure is a clinical stage biotechnology company that develops therapeutics for neurology, immuno-oncology, inflammatory diseases, and other genetic disorders based on its proprietary spherical nucleic acid technology.

3.      On November 15, 2021, after the market closed, Exicure filed a Form 12b-25 with the SEC stating that it could not timely file its quarterly report for the period ended September 30, 2021. It explained that the Company was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia."

1

4.    On this news, the Company's stock price fell $0.293, or 27.4%, to close at $0.777 per share on November 16, 2021, on unusually heavy trading volume.

5.    On November 19, 2021, before the market opened, Exicure issued a press release titled "Exicure, Inc. Reports Third Quarter 2021 Financial Results and Corporate Progress." Therein, Exicure disclosed that "[t]he Audit Committee has retained external counsel to conduct an internal investigation" regarding the claim by a former Company senior researcher regarding alleged improprieties with respect to the Company's XCUR-FXN preclinical program, and that "[t]he Company is currently unable to predict the timing or outcome of the investigation."

6.    On this news, the Company's stock price fell $0.198, or 30%, to close at $0.46 per share on November 19, 2021, on unusually heavy trading volume.

7.    On December 10, 2021, after the market closed, Exicure issued a press release titled "Exicure, Inc. Announces Results of Internal Investigation and Implementation of Strategic Measures to Reduce Cash Burn and Prioritize Pipeline Focus." Therein, Exicure announced the "results of its previously disclosed independent internal investigation" and disclosed that "misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021," that the data related to the efficacy of XCUR-FXN. The Company also announced that in response the wrongdoing, the Company was implementing "[a] staggered workforce reduction of approximately 50%, expected to be completed by January 2022," and an "[i]ndefinite suspension of further development of the Company's XCUR-FXN program for the treatment of Friedreich's ataxia." The Company further disclosed that "Douglas Feltner, M.D., the Company's Chief Medical Officer, has agreed to assist in the wind down of the cavrotolimod and XCUR-FXN programs and will depart the Company on

2

January 31, 2022." Exicure also replaced its Chief Executive Officer, Dr. David Giljohann, who would serve as Chief Technology Officer through January 31, 2022.

8. On this news, the Company's stock price fell $0.185, or 40.1%, to close at $0.27 per share on December 13, 2021 (the next trading day following December 10, 2021), on unusually heavy trading volume.

9. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Mark Colwell, as set forth in the accompanying certification, incorporated by reference herein, purchased Exicure securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Exicure is incorporated under the laws of Delaware with its principal executive offices located in Chicago, Illinois. Exicure's common stock trades on the NASDAQ Exchange under the symbol "XCUR."

17.     Defendant David A. Giljohann ("Giljohann") was the Company's Chief Executive Officer ("CEO") from November 2013 to December 2021. He served as interim Chief Financial Officer ("CFO") from September 2020 to May 2021.

18.     Defendant Brian C. Bock ("Bock") has been the Company's CFO since May 2021. He has been Exicure's CEO since December 2021.

19.     Defendants Giljohann and Bock (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Exicure is a clinical stage biotechnology company that develops therapeutics for neurology, immuno-oncology, inflammatory diseases, and other genetic disorders based on its proprietary spherical nucleic acid technology.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on January 7, 2021. On that day, Exicure hosted a virtual R&D Day to purportedly "discuss its neuroscience pipeline, including its lead program for Friedreich's Ataxia (FA)." In the slide presentation, used in the event, and filed with the SEC, the Company stated, in relevant part:

## Friedreich's Ataxia (FA) – Progressive Neurological Disorder

- Degenerative, debilitating, life-shortening, neuromuscular disorder causing loss of coordination (ataxia) in arms and legs
- Monogenic disorder: FXN mutations result in reduced levels of frataxin
- Leads to progressive childhood disability and early death
  - Mean onset of symptoms between age 10 to 15[1]
  - Most patients wheelchair-bound within 2 decades of onset
  - Loss of coordination, neuropathy, hearing and vision loss, cardiomyopathy, diabetes
  - Most patients succumbing to disease in their 30s and 40s
- Most common inherited ataxia: ~13,500 cases across major reimbursable markets[2,3]
- No approved therapy for FA
- No therapies in late development which address the molecular cause of FA



1) Jara-Palma, Reichardt H, DeLeuchi MD, 2017   2) Crystufer, N+4, EdRa.   3) US, CS25, Canada, Australia

exıcure                                                                                                                          32

## FA Results in Rapid Neurological Deterioration and Early Mortality



**FIG. 1.** Kaplan-Meier curve representing the disease duration before confinement to wheelchair for typical FA, LOFA, and vLOFA (P <0.001)



**Fig. 3.** Distribution of deaths by age. The majority of deaths occurred between ages 16 and 45.

1) Lessing et al, 2010; Romero et al., 2016 with similar results   2) Tsou et al., 2011   3) LOFA – Late-Onset FA, n=44, mean onset at 28 years   4) vLOFA – Very Late-Onset FA, n=35, mean onset at 50 years   5) n=1360, mean onset at 13 years

exıcure                                                                                                                          33

6

## Reduced Frataxin Expression Due To Expanded GAA Repeats Cause Neuronal Dysfunction in Friedreich's Ataxia



exicure

## Residual Frataxin Levels in FA Support Oligonucleotide Approach

Frataxin Levels in Blood from FA Patients vs Controls



**Conclusions**

- Patients with FA have substantial residual frataxin

- Residual frataxin levels support Exicure's protein upregulation approach

- "Classic", typical onset[1] FA patients with frataxin levels of ~25% of healthy control in whole blood

- Late onset[2] FA patients with 45-60% of healthy control levels, below carrier levels of 65-70%

- Differential in disease onset based on frataxin levels strongly supports therapeutic rationale for increasing frataxin to slow disease progression

exicure

## Frataxin Levels Are Closely Tied to Disease Outcomes in FA



| GAA Repeat Number[1] Highly Correlated with Frataxin Levels[2] | GAA Repeat Number Highly Correlated with Disease Outcomes[3,4] |

- Conclusion from natural history data: **A novel therapeutic delivering even small increases in frataxin levels could drive meaningfully milder phenotypes**
- Natural genetic variation in GAA repeats in FA patients enables genotype-to-phenotype correlation
- Correlation virtually identical for FXN mRNA / protein

exicure

## Modified Friedreich's Ataxia Rating Scale (mFARS) is a Validated, Approvable Endpoint for Measuring Impact on Disease Progression

- The "modified FARS" (mFARS) is the clinical rating scale used as the **primary outcome measure** in most contemporary clinical studies in Friedreich's Ataxia

- mFARS score (0-93 points, higher score = greater disability) is based on a **neurological examination** of bulbar, upper limb, lower limb, and upright stability/gait functions

- **mFARS** scores are **highly correlated** with scores of the predecessor version, the **FARS**, which has been used in past studies correlating frataxins to disease severity

 **Bulbar Function** (speech, cough, facial/tongue atrophy) – 5 pts

 **Upper Limb Coordination** (finger, arms) – 36 pts

 **Lower Limb Coordination** (legs, feet) – 16 pts

 **Upright Stability** (sitting, walking, etc.) – 36 pts

exicure

8



22. On March 11, 2021, Exicure announced its full year 2020 financial results and "Corporate Progress" in a press release that stated, in relevant part:

XCUR-FXN for Friedreich's ataxia

- Announced neurology pipeline expansion during virtual R&D day presentation in January 2021

- Initiated IND-enabling studies for XCUR-FXN in December 2020

23. On May 12, 2021, Exicure announced its first quarter 2021 financial results in a press release, which also reported "Pipeline Highlights." It stated, in relevant part:

**Neurology – XCUR-FXN**

- The Company hosted a virtual R&D Day in January 2021 to discuss progress within its neurology pipeline, which included an overview of the Company's XCUR-FXN path to clinical validation for the treatment of Friedreich's Ataxia (FA).

9

- During the first quarter of 2021, the Company continued to advance preclinical and IND-enabling studies of XCUR-FXN in FA and disclosed encouraging preclinical mouse data, demonstrating significant upregulation of XCUR-FXN components in the brain and spinal cord. The Company believes these data support the potential for XCUR-FXN as a disease-modifying treatment for the disease.

- The Company is on track with prior guidance to submit an IND for XCUR-FXN in FA by year-end 2021 and expects to initiate a first-in-patient Phase 1b clinical trial of XCUR-FXN in FA in the first half of 2022.

24.     On August 12, 2021, Exicure announced its second quarter 2021 financial results

in a press release, which also reported "Pipeline Highlights & Updates." It stated, in relevant part:

**XCUR-FXN – Friedreich's Ataxia**

- The Company hosted a virtual R&D Day on July 15, 2021 to present new and previously unreleased preclinical data and discuss progress with XCUR-FXN:

    o   Observed 2-3x fold change in measurable Frataxin protein in the cerebellum and dorsal root ganglia (amongst other important brain and spinal regions) in Pook800J mouse model indicating potential for disease resolution;

    o   Showed no adverse, test-related histopathological findings in repeat dose range finding rat study.

- The Company continues to expect to file for an IND for XCUR-FXN in FA by the end of 2021 and to dose the first human patient in the first half of 2022.

25.     The same day, the Company filed its quarterly report on Form 10-Q for the period

ended June 30, 2021 with the SEC. Therein, Exicure stated:

We initiated IND-enabling studies for XCUR-FXN in late 2020. As discussed during our R&D day presentation in July 2021, in a completed non-GLP dose range finding study of XCUR-FXN in rats, designed to evaluate the safety profile of XCUR-FXN following intrathecal dosing, we have not observed any test article-related adverse findings and the highest dose level in this study (three repeat intrathecal (IT) injections of 782 µg each) was the no-observed-adverse-effect level (NOAEL) in this study. We expect to complete our GLP toxicology program and file an IND for XCUR-FXN in FA in the fourth quarter of 2021, and expect to initiate a first-in-patient Phase 1b clinical trial for XCUR-FXN in FA in the first half of 2022. We are collaborating closely with the Friedreich's Ataxia Research

10

Alliance (FARA), the non-profit, charitable organization dedicated to accelerating research leading to treatments and a cure for FA, in the design and site selection of the Phase 1b clinical trial. The Phase 1b clinical trial is designed to demonstrate safety and characterize pharmacokinetic properties of multiple ascending doses of XCUR-FXN in FA patients and inform Phase 2/3 dose selection. We are also planning to examine multiple biomarkers, including brain imaging and measurements of FXN levels in patient cerebrospinal fluid (CSF), to provide rapid read-out for target engagement and pharmacodynamic (PD) effects. We may include one or more exploratory endpoints, such as the modified Friedreich's Ataxia Rating Scale (mFARS), to prepare for a subsequent pivotal clinical trial.

26. The above statements identified in ¶¶ 21-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

27. On November 15, 2021, Exicure filed a Form 12b-25 with the SEC stating that it could not timely file its quarterly report for the period ended September 30, 2021. It explained that the Company was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia."

11

28. On this news, the Company's stock price fell $0.293, or 27.4%, to close at $0.777 per share on November 16, 2021, on unusually heavy trading volume.

29. The above statements identified in ¶ 27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

30. On November 19, 2021, before the market opened, Exicure issued a press release titled "Exicure, Inc. Reports Third Quarter 2021 Financial Results and Corporate Progress." Therein, Exicure disclosed that "[t]he Audit Committee has retained external counsel to conduct an internal investigation" regarding the claim by a former Company senior researcher regarding alleged improprieties with respect to the Company's XCUR-FXN preclinical program, and that "[t]he Company is currently unable to predict the timing or outcome of the investigation." In greater part, the Company stated:

> Exicure, Inc.® (NASDAQ: XCUR), a pioneer in gene regulatory and immunotherapeutic drugs utilizing spherical nucleic acid (SNA™) technology, today reported financial results for the quarter ended September 30, 2021 and provided an update on corporate progress.

12

"I would first like to recognize the amazing work from the high-quality team members at Exicure as we continue to invest into driving value from our SNA platform technology, most notably being recognized in the third quarter through the consummation of another strategic partnership which brought in additional non-dilutive capital," said Exicure CEO Dr. David Giljohann. "It is important to note our SNA platform is grounded in 15 years of intensive and rigorous scientific development across industry and academia. ***Although a recent claim of improprieties from one researcher, specifically related to our FXN program, are concerning, we are highly confident in our platform technology which delivers DNA and RNA into cells and tissues more effectively***. I remain proud of the team members at Exicure who continue to work hard to bring new medicines to patients in need."

**Corporate Updates**

As previously reported, on November 9, 2021, the Audit Committee of the Board of Directors of the Company was notified of a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia. ***The Audit Committee has retained external counsel to conduct an internal investigation of the claim. The Company is currently unable to predict the timing or outcome of the investigation***.

**Pipeline Highlights & Updates**

**Neurology**

. . .

**XCUR-FXN–Friedreich's Ataxia**

Exicure remains committed to maintaining its development plans and to pursuing its business strategy in the best interests of its stockholders as well as the patients it looks to serve; however, it acknowledges that, ***at this point in time, it is unable to determine the potential impact of the asserted claim on its research and development activities or the timing of completion of its current research and development of its XCUR-FXN preclinical program for the treatment of FA, as the investigation of the asserted claim remains ongoing***.

(Emphasis added.)

31. On this news, the Company's stock price fell $0.198, or 30%, to close at $0.46 per share on November 19, 2021, on unusually heavy trading volume.

13

32.     The above statements identified in ¶ 30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

33.     On December 10, 2021, after the market closed, Exicure issued a press release titled "Exicure, Inc. Announces Results of Internal Investigation and Implementation of Strategic Measures to Reduce Cash Burn and Prioritize Pipeline Focus." Therein, Exicure announced the "results of its previously disclosed independent internal investigation" and disclosed that "misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021," that the data related to the efficacy of XCUR-FXN. The Company also announced that in response the wrongdoing, the Company was implementing "[a] staggered workforce reduction of approximately 50%, expected to be completed by January 2022," and an "[i]ndefinite suspension of further development of the Company's XCUR-FXN program for the treatment of Friedreich's ataxia." The Company further disclosed that "Douglas Feltner, M.D., the Company's Chief Medical Officer, has agreed to assist

14

in the wind down of the cavrotolimod and XCUR-FXN programs and will depart the Company on January 31, 2022." Exicure also replaced its Chief Executive Officer, Dr. David Giljohann, who would serve as Chief Technology Officer through January 31, 2022. In greater part, the Company stated:

> Exicure, Inc.® (NASDAQ: XCUR) announced the results of its previously disclosed independent internal investigation and a number of strategic actions aimed to reduce cash spend and prioritize the Company's therapeutic pipeline.

> The Audit Committee of the Board of Directors of the Company (the "Audit Committee") today announced the findings of the internal investigation initiated and overseen by the Audit Committee and conducted by outside counsel in connection with alleged improprieties that Grant Corbett, Ph.D., the Company's former Group Lead of Neuroscience, claimed to have committed with respect to the Company's XCUR-FXN preclinical program.

> The results of the investigation are summarized below.

> - Beginning in the autumn of 2020, ***Dr. Corbett misreported raw data from certain research and development experiments related to XCUR-FXN***;
> - Dr. Corbett misreported the results of at least three different experiments that were conducted through at least February 2021;
> - The misreported data related solely to efficacy rather than safety of XCUR-FXN;
> - ***The misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021***;
> - Dr. Corbett acted alone in misreporting the data, without the assistance or knowledge of anyone else at the Company, including Company management and other research and development employees and did not inform anyone at the Company of his actions until his resignation in November 2021;
> - Company management reasonably relied on Dr. Corbett's analysis when making public statements that included Dr. Corbett's misreported data; and
> - No other Company program was impacted by Dr. Corbett's misreporting of the XCUR-FXN data.

> After a review of the Audit Committee's findings from the investigation and in combination with a previously initiated strategic review of the Company's business plans and objectives and its existing cash resources, the Company's Board of Directors has implemented the following approved plan:

- *A staggered workforce reduction of approximately 50%, expected to be completed by January 2022*;
- *Discontinuation of further enrollment and the ethical wind down of the Company's ongoing Phase 1b/2 cavrotolimod (AST-008) clinical trial in patients with solid tumors*
- *Indefinite suspension of further development of the Company's XCUR-FXN program for the treatment of Friedreich's ataxia*
- *Restructuring and realignment of the Company's executive team as follows, effective today*:
  - o Brian C. Bock, the Company's former Chief Financial Officer, has been appointed as the Company's President and Chief Executive Officer, *replacing David Giljohann*, and was appointed as a member of the Board.
  - o *Dr. David Giljohann, the Company's former Chief Executive Officer, has resigned from the Board and will serve as Chief Technology Officer through January 31, 2022.*
  - o Matthias Schroff, the Company's former Chief Operating Officer, has assumed the new role of Chief Scientific Officer;
  - o Sarah Longoria, the Company's former Vice President of Human Resources has been appointed as the Company's Chief Human Resources Officer and Chief Compliance Officer; and
  - o *Douglas Feltner, M.D., the Company's Chief Medical Officer, has agreed to assist in the wind down of the cavrotolimod and XCUR-FXN programs and will depart the Company on January 31, 2022*.

Exicure expects to realize approximately $6.0 million in employee related cost savings in 2022, plus additional costs relating to the elimination of the cavrotolimod and XCUR-FXN programs. *The Company estimates that it will incur total expenses relating to the restructuring of approximately $1.2 million, consisting of severance and termination-related costs and expects to record a significant portion of these charges in the fourth quarter of 2021*.

The Company intends to align its research and development resources to support (i) the development of its preclinical program targeting SCN9A for neuropathic pain, (ii) the continued advancement of its partnered programs with Ipsen Biopharm Limited to develop SNA-based treatments in neuroscience targeting Huntington's disease and Angelman syndrome, (iii) its continued advancement of its partnered program with AbbVie to develop SNA-based treatments for hair loss disorders, as well as (iv) the continued research and development of other undisclosed therapeutic product candidates.

The Company also announced a prepayment of $10.0 million of its outstanding loans under its senior secured term loan debt facility with MidCap Financial Trust, as agent, and Silicon Valley Bank (SVB), leaving a remaining outstanding balance

of $7.5 million, which will remain subject to the existing terms under the loan facility.

"This has been a difficult time for all of our stakeholders and Exicure employees. I want to first thank the employees impacted by our workforce reduction for their significant contributions in pursuing treatments for patients with unmet medical needs and wish them success in their future endeavors. Although *this unfortunate event will have residual effects*, I strongly believe there is great value to be unlocked at Exicure with our proprietary Spherical Nucleic Acid (SNA) technology, and I look forward to advancing our promising programs in pain and other neuroscience diseases and continuing to closely work with our partners to develop innovative therapies for the treatment of genetic disorders," stated Brian Bock, President and Chief Executive Officer, Exicure.

"On behalf of the Board of Directors, I want to thank David Giljohann for his discoveries and contributions to the development of our proprietary SNA architecture, commitment in building Exicure from the ground up and leadership during his time at the Company," said Tim Walbert, Chairman of the Board, Exicure. "We look forward to working closely with Brian Bock as he assumes leadership of the Company. The Board believes Brian's disciplined approach as well as his financial and investment banking background make him well suited to develop the new strategic path for Exicure and navigate the Company through the next phase in the Company's evolution."

(Emphasis added.)

34.     On this news, the Company's stock price fell $0.185, or 40.1%, to close at $0.27 per share on December 13, 2021 (the next trading day following December 10, 2021), on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Exicure securities between January 7, 2021 and December 10, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate

17

families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Exicure's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Exicure shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Exicure or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

18

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Exicure; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

41.     The market for Exicure's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Exicure's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Exicure's securities relying upon the integrity of the market price of the Company's securities and market information relating to Exicure, and have been damaged thereby.

42.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Exicure's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Exicure's business, operations, and prospects as alleged herein.

19

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Exicure's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

44.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45.     During the Class Period, Plaintiff and the Class purchased Exicure's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

20

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Exicure, their control over, and/or receipt and/or modification of Exicure's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Exicure, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

47. The market for Exicure's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Exicure's securities traded at artificially inflated prices during the Class Period. On February 10, 2021, the Company's share price closed at a Class Period high of $2.80 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Exicure's securities and market information relating to Exicure, and have been damaged thereby.

48. During the Class Period, the artificial inflation of Exicure's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Exicure's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Exicure and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

21

in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49.     At all relevant times, the market for Exicure's securities was an efficient market for the following reasons, among others:

(a)     Exicure shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Exicure filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Exicure regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Exicure was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for Exicure's securities promptly digested current information regarding Exicure from all publicly available sources and reflected such information in Exicure's share price. Under these circumstances, all purchasers of Exicure's securities during the Class Period suffered similar injury through their purchase of Exicure's securities at artificially inflated prices and a presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Exicure who knew that the statement was false when made.

23

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Exicure's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

55.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Exicure's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Exicure's financial well-being and prospects, as specified herein.

24

57.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Exicure's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Exicure and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Exicure's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Exicure's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Exicure's securities during the Class Period at artificially high prices and were damaged thereby.

61. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Exicure was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Exicure securities, or,

if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     Individual Defendants acted as controlling persons of Exicure within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, Exicure and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 4, 2022        Plaintiff,

By:  s/ *Marvin A. Miller*_____

       Marvin A. Miller
       **MILLER LAW LLC**
       115 S. LaSalle Street, Suite 2910
       Chicago, IL 60603
       Telephone: (312) 332-3400
       mmiller@millerlawllc.com

       *Local Counsel for Plaintiff*

       Robert V. Prongay
       Charles H. Linehan
       Pavithra Rajesh
       **GLANCY PRONGAY & MURRAY LLP**
       1925 Century Park East, Suite 2100
       Los Angeles, CA 90067
       Telephone: (310) 201-9150
       Facsimile: (310) 201-9160

       *Counsel for Plaintiff*

DocuSign Envelope ID: E79934A6-F4D4-4DD3-82E8-4CBA9F559C62

## SWORN CERTIFICATION OF PLAINTIFF
## EXICURE, INC. (XCUR) SECURITIES LITIGATION

I, Mark Colwell, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.  I did not purchase the Exicure, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Exicure, Inc. securities during the period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


| 2/2/2022 | *Mark Colwell* |
| --- | --- |
| Date | Mark Colwell |

DocuSign Envelope ID: E79934A6-F4D4-4DD3-82E8-4CBA9F559C62

**Mark Colwell's Transactions in Exicure, Inc. (XCUR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/22/2021 | Bought | 25 | $1.7500 |
| 8/2/2021 | Bought | 105 | $1.8550 |
| 11/9/2021 | Bought | 135 | $1.0700 |
| 11/19/2021 | Sold | -2,150 | $0.5542 |