# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARK COLWELL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) Civil Action No. 1:21-cv-06637 <br> Judge John F. Kness <br> Magistrate Judge Jeffrey T. Gilbert |
| Plaintiff, | ) ) ) CLASS ACTION |
| v. | ) ) |
| EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF JAMES MATHEW FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF HIS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................. 4

    A.     Mathew Is The Most Adequate Plaintiff............................................................ 4

          1.     Mathew Believes He Has The Largest Financial Interest In The Relief Sought By The Class ...................................................................5

          2.     Mathew Otherwise Satisfies The Requirements Of Rule 23 .................................7

    B.     Mathew Selected Well-Qualified Lead Counsel To Represent The Class ...................... 8

CONCLUSION.......................................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Chandler v. Ulta Beauty, Inc.*,
No. 18-cv-1577, 2018 WL 3141763 (N.D. Ill. June 26, 2018)................................................ 5, 6

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ................................................ 5

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................ 2, 6

*In re Groupon, Inc. Securities Litigation*,
No. 12 C 2450, 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012)................................................ 7, 8

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461035 (N.D. Ill. Aug. 11, 1997)...................................................... 5

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) .......................................................................................... 5

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .................................................................................................. 2, 6

## STATUTES

15 U.S.C. § 78.................................................................................................................... passim

17 C.F.R. § 240.10b-5................................................................................................................ 1

## RULES

Fed. R. Civ. P. 23 ............................................................................................................... 1, 2, 7

James Mathew ("Mathew") respectfully submits this memorandum of law in support of his motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned securities class action alleges that Exicure, Inc. ("Exicure" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the action alleges that from January 7, 2021 through December 10, 2021, inclusive (the "Class Period"), Defendants misrepresented the results of Exicure's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia ("FA") in public presentations and SEC filings, concealing serious improprieties committed by a senior researcher in the preclinical program.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Mathew is the "most adequate plaintiff" by virtue of, among other things, the $226,953.90 in losses that he incurred on his investments in Exicure securities during the Class Period as assessed under the U.S. Supreme Court's ruling in

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) and the Seventh Circuit's ruling in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). Mathew also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class. Indeed, Mathew fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. *See* Declaration of Elizabeth A. Fegan ("Fegan Decl."), Ex. A, Declaration of James Mathew.

Further, Mathew has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Mathew respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## FACTUAL BACKGROUND

Exicure is a clinical stage biotechnology company that develops therapeutics for neurology, immune-oncology, inflammatory diseases and genetic disorders based on its proprietary spherical nucleic acid technology. ¶2.[1]

Throughout the Class Period, Defendants made numerous materially false and misleading statements about XCUR-FXN, Exicure's preclinical program for the treatment of FA. ¶5. For instance, on May 12, 2021, Exicure stated that studies of XCUR-FXN showed "encouraging preclinical mouse data," which the "Company believes . . . support the potential for XCUR-FXN as a disease-modifying treatment for the disease," and "[t]he Company is on track with prior guidance to submit an IND for XCUR-FXN in FA by year-end 2021 and expects to initiate a first-in-patient Phase 1b clinical trial of XCUR-FXN in FA in the first half of 2022." ¶23. As another example, on August 12, 2021, Exicure touted positive results in certain studies on mice and rats

---

[1] All citations to ¶_ refer to the Amended Class Action Complaint in this action. ECF No. 8.

and reiterated that it "continues to expect to file for an IND for XCUR-FXN in FA by the end of 2021 and to dose the first human patient in the first half of 2022." ¶24.

These statements were materially false and misleading. In truth, as alleged, Defendants concealed that: (1) there were serious improprieties in the preclinical program for XCUR-FXN; (2) the Company lacked effective controls over the collection, analysis, and dissemination of data relating to the program; (3) Exicure misreported the efficacy of XCUR-FXN in its public presentations and SEC filings; and (4) the Company would therefore have to suspend the XCUR-FXN program. ¶26.

On November 15, 2021, Exicure filed a Form 12b-25 with the SEC revealing that it could not timely file its quarterly financial report because it was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN" program. ¶27. This news caused the price of Exicure stock to decline $0.293 per share, or 27.4%, to close at $0.777 per share on November 16, 2021. ¶28.

Then, on November 19, 2021, Exicure issued a press release disclosing that "[t]he Audit Committee has retained external counsel to conduct an internal investigation" into the researcher's claims and that it was "currently unable to predict the timing or outcome of the investigation." ¶30. This news caused the price of Exicure stock to decline $0.198 per share, or 30%, to close at $0.46 per share on November 19, 2021. ¶31.

Finally, on December 10, 2021, Exicure disclosed that the Company included "misreported data" related to the efficacy of XCUR-FXN in "various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021." ¶33. Additionally, Exicure announced that in response to the wrongdoing, it was implementing "[a] staggered workforce

3

reduction of approximately 50%" and an "[i]ndefinite suspension of further development of the Company's XCUR-FXN program." *Id*. Exicure further announced that its Chief Medical Officer and its Chief Executive Officer would depart the Company on January 31, 2022. *Id*. This news caused the price of Exicure stock to decline $0.185 per share, or 40.1%, to close at $0.27 per share on December 13, 2021. ¶34.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On December 13, 2021, Plaintiff Mark Colwell filed this case alleging that Defendants defrauded investors during the period of March 11, 2021 to November 15, 2021. ECF No. 1 at ¶1. On the same day, counsel for Mr. Colwell published a notice on *Business Wire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by February 11, 2022. *See* Fegan Decl. Ex. B. On February 4, 2022, Mr. Colwell filed an amended complaint alleging that Defendants defrauded investors during an expanded period of January 7, 2021 to December 10, 2021. ECF No. 8 at ¶1. Also on February 4, 2022, counsel for Mr. Colwell published a notice on *Business Wire* alerting investors to the expanded Class Period, and reminding them of the deadline on February 11, 2022 to seek to serve as Lead Plaintiff. *See* Fegan Decl. Ex. C. Accordingly, Mathew satisfies the PSLRA's 60-day requirement through the filing of this motion.

### A. Mathew Is The Most Adequate Plaintiff

Mathew respectfully submits that he is entitled to be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that

the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Mathew believes he is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**1. Mathew Believes He Has The Largest Financial Interest In The Relief Sought By The Class**

Mathew believes that he has the "largest financial interest in the relief sought by the Class" and thus should be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). When assessing financial interest, courts in this district typically consider four factors, referred to as "*Lax* factors*,*" to analyze a movant's financial interest: (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered. *See Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *2 (N.D. Ill. June 26, 2018); *Lax v. First Merchants Acceptance Corp.*, No 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Most courts agree that the most important *Lax* factor in determining a movant's financial interest is the approximate losses suffered. *Ulta Beauty*, 2018 WL 3141763, at *3 (collecting cases). To determine loss, courts rely on the first-in, first-out ("FIFO") and last-in, first-out ("LIFO") accounting methods, though "'the overwhelming trend . . . nationwide has been to use LIFO.'" *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 & n.5 (S.D.N.Y. 2015) (citation omitted).

Further, courts in this district and others have held that only losses incurred as a result of the fraud alleged against the Defendants should be considered when determining largest financial interest. *See e.g., Ulta Beauty*, 2018 WL 3141763, at *4 ("the Court will exclude losses incurred prior to both of the corrective disclosures"); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) ("courts should

5

consider only those losses that will actually be recoverable in the class action . . . and make determinations of largest financial interest only based on the facts alleged in the complaint"). This stems from the principle supported by the Supreme Court's holding in *Dura* and the Seventh Circuit's holding in *Wong* that, "a plaintiff cannot satisfy the causation element of a securities fraud claim based on an inflated price theory relating to securities sold before the fraud was revealed." *Ulta Beauty*, 2018 WL 3141763, at *4. In *Dura*, the Supreme Court held that, "if [] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." 544 U.S at 342. Similarly, the Seventh Circuit held in *Wong* that, "those class members who sold their [] common stock before . . . the first corrective price decline, cannot be said to have suffered economic loss caused by [the] alleged fraud." *Wong*, 773 F.3d at 864-65.

As set forth below, Mathew has a substantial financial interest under each metric:[2]

| Shares Purchased | Net Shares Purchased | Net Expenditures | FIFO/LIFO Loss | Dura Loss (FIFO/LIFO) |
|---|---|---|---|---|
| 132,103 | 132,103 | $253,547.16 | $226,953.90 | $226,953.90 |

To the best of Mathew's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Mathew believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

---

[2] Mathew's PSLRA-required Certification is attached as Exhibit D to the Fegan Decl. submitted herewith. A chart setting forth calculations of Mathew's financial interest is attached as Exhibit E to the Fegan Decl. Mathew's PSLRA certification and financial interest calculation provide all the trading information necessary to calculate his financial interest under all possible metric and does not presuppose that there is only one valid methodology.

6

**2.      Mathew Otherwise Satisfies The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, Mathew otherwise satisfies the requirements of Rule 23.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).   On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing that it satisfies" the typicality and adequacy requirements of Rule 23.   *In re Groupon, Inc. Securities Litigation*, No. 12 C 2450, 2012 WL 3779311, at *3 (N.D. Ill. Aug. 28, 2012).   Here, Mathew clearly satisfies both requirements.

Mathew's claims are typical of the claims of other purchasers of Exicure securities. Typicality is satisfied when each Class member's claims "arise out of the 'same event or practice or course of conduct that gives rise to the claims of other class members and . . . [its] claims are based on the same legal theory.'"   *Id.* (citation omitted).   Here, Mathew's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical.   Like all other Class members, Mathew: (1) purchased Exicure securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged as a result.   *Id.* (typicality satisfied when movant "purchased [] securities during the class period, paid prices allegedly inflated because of the claimed false and misleading statements by defendants, and thereby allegedly suffered damages").   As such, Mathew is a typical Class representative.

Mathew likewise satisfies the adequacy requirement of Rule 23.   Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   In order for the Class's interests to be fairly and adequately represented, a Lead Plaintiff must not have interests that are antagonistic to the Class that it seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel

that is capable and qualified to vigorously represent the interests of the Class. *In re Groupon*, 2012 WL3779311, at *3. Mathew satisfies these elements because his substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims. Mathew's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mathew and other Class members.

Indeed, Mathew is committed to discharging his obligations as a Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Fegan Decl., Ex. A. What's more, Mathew's declaration provides the Court with additional information supporting his bona fides, including explaining who he is, that he is an experienced investor, and given his substantial financial interest in the litigation, that he intends to continue to actively oversee counsel, review pleadings and motion papers, participate in discovery, and confer with counsel regarding litigation strategy. *See Id*. ¶¶2-6.

Further, Mathew has demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**B.      Mathew Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[C]ourts typically do not disturb a lead plaintiff's selection unless it is necessary to protect the interests of the class." *In re Groupon*, 2012 WL 3779311, at *5.

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of institutional investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Fegan Decl. Ex. F. The firm achieved a $234 million resolution for the benefit of the class in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121 (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

Most recently, BFA achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, 3:17-cv-00558-SRU (D. Conn.) and a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, 3:19-cv-04744-WHA (N.D. Cal.). Final court approval of both settlements is pending. Currently, BFA is serving as Lead Counsel in *In re Citigroup Sec. Litig.*, 20-cv-09132 (S.D.N.Y.). Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Mathew's selection of BFA as Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, Mathew respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: February 11, 2022

Respectfully Submitted,

/s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Proposed Lead Plaintiff James Mathew*

Javier Bleichmar (*pro hac vice* forthcoming)
Ross Shikowitz (*pro hac vice* forthcoming)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff James Mathew, and Proposed Lead Counsel for the Class*

Brian Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Proposed Lead Plaintiff James Mathew*

10