## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARK COLWELL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:21-cv-06637<br>Judge John F. Kness<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**ORAL ARGUMENT REQUESTED**<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
JAMES MATHEW FOR APPOINTMENT AS LEAD PLAINTIFF,
APPROVAL OF HIS SELECTION OF LEAD COUNSEL,
<u>AND IN OPPOSITION TO THE COMPETING MOTION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 4

    A.   Mathew Has The Largest Financial Interest ...................................................... 4

        1.    Mathew Has The Largest Recoverable Loss ........................................... 4

        2.    Mathew Purchased More Net Shares ....................................................... 8

    B.   Mathew Satisfies The Relevant Requirements Of Rule 23 ............................... 9

    C.   Gui Does Not Trigger The Presumption ......................................................... 11

CONCLUSION ......................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Cases**

*Andrada v. Atherogenics, Inc.*,
 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ................................................................... 8

*Chandler v. Ulta Beauty, Inc.*,
 2018 WL 3141763 (N.D. Ill. June 26, 2018) ...................................................... 4, 5, 8

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ................................................................... 6

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ............................................................................................. 1, 2, 5

*Galmi v. Teva Pharms. Indust. Ltd.*,
 302 F. Supp. 3d 485 (D. Conn. 2017) ..................................................................... 4, 6

*Hedick v. Kraft Heinz Co.*,
 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .................................................... 1, 4, 5, 8

*In re Bally Total Fitness Sec. Litig.*,
 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ............................................................ 7, 8

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ...................................................................................... 6

*In re Comverse Tech., Inc. Sec. Litig.*,
 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .................................................................. 6

*In re Groupon, Inc. Sec. Litig*,
 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012) ............................................................. 10

*Khunt v. Alibaba Group Holding Ltd.*,
 102 F. Supp. 3d 523 (S.D.N.Y. 2015) ......................................................................... 6

*Kops v. NVE Corp.*,
 2006 WL 2035508 (D. Minn. July 19, 2006) ........................................................... 7, 9

*Leavitt v. Alnylam Pharms., Inc.*,
 378 F. Supp. 3d 60 (D. Mass. 2019) ........................................................................... 6

*Malirov v. Eros Int'l PLC*,
 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ................................................................. 8

*Pelletier v. Endo Int'l PLC*,
 316 F. Supp. 3d 846 (E.D. Pa. 2018) .......................................................................... 7

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) .............................................................................. 6

*Schueneman v. Arena Pharms., Inc.*,
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ............................................................... 8

*Sokolow v. LJM Funds Mgmt., Ltd.*,
2018 WL 3141814 (N.D. Ill. June 26, 2018) ............................................................... 9

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) .............................................................................. 6

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ................................................................................... 1, 5

*Xu v. FibroGen, Inc.*,
2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ............................................................ 6

## Statutes

15 U.S.C. § 78u.......................................................................................................... 1, 4, 9

## Rules

Fed. R. Civ. P. 23 .......................................................................................................... 10

## Other Authorities

*Manual for Complex Litigation* (4th ed. 2004) ............................................................... 8

Mathew respectfully submits this memorandum of law in further support of his motion (ECF No. 19) to be appointed Lead Plaintiff, for approval of his selection of BFA as Lead Counsel, and in opposition to the competing motion.[1]

## PRELIMINARY STATEMENT

The PSLRA states that the Court is to appoint as Lead Plaintiff the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts in this District and throughout the country equate "largest financial interest" with "recoverable loss." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *6 (N.D. Ill. Oct. 8, 2019) (Dow, J.). Here, Mathew has the largest recoverable loss of any movant and thus has the largest financial interest and is entitled to be appointed Lead Plaintiff. Mathew is a sophisticated investor with a background in business, is fully aware of his responsibilities as Lead Plaintiff, and selected a preeminent law firm specialized in prosecuting securities class actions as proposed Lead Counsel that will provide the class with excellent and cost-effective representation. *See* ECF No. 21-2.

The only movant to claim a facially larger loss than Mathew is Martin Gui ("Gui"). ECF No. 23 at 6.[2] However, when properly calculated under the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and the Seventh Circuit's decision in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014), Gui has a far smaller recoverable loss. The Supreme Court held in *Dura* that there must be a causal connection between a plaintiff's investment loss and the defendant's fraudulent conduct. *Dura*, 544 U.S. at 346. That causal

---

[1] Capitalized terms are defined in Mathew's initial brief (ECF No. 21), all emphasis is added, and internal quotations and citations are omitted, unless otherwise indicated.

[2] On February 11, 2022, Mathew and three other movants sought Lead Plaintiff appointment: (1) Gui (ECF No. 22); (2) Jeffrey Coleman ("Coleman") (ECF No. 17); and (3) Sam Uemura ("Uemura") (ECF No. 13). On February 25, 2022, Coleman and Uemura withdrew their motions in recognition that they do not have the largest financial interest. *See* ECF Nos. 35-36.

connection requires a corrective disclosure that reveals the defendant's fraud and causes the price of the securities to decline. *See id.* If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss" and the purchaser is not entitled to a recovery under the federal securities laws. *Id.* at 342.

Gui acknowledges in his motion that the truth regarding Defendants' alleged misrepresentations began to emerge on "November 15, 2021 [when] Exicure . . . stat[ed] that it could not timely file its quarterly report for the period ended September 30, 2021 [because] the Company was investigating a claim…[concerning] alleged improprieties…committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia." ECF No. 23 at 3.

Significantly, a substantial portion of Gui's loss resulted from his sales of 537,334 shares of Exicure stock ***before*** that November 15 disclosure. Gui only purchased 650,000 shares, meaning that he sold nearly ***83%*** of his holdings before any alleged revelation of Defendants' fraud. *See* ECF No. 23-3. As such, Gui's repeated statements that he incurred the entirety of his loss "as a result of defendants' wrongful conduct as alleged in the action" (ECF Nos. 22 at 1; 23 at 1, 6) and that his loss represents his "recoverable financial interest" (ECF No. 23 at 6) are wrong.

Eliminating the non-recoverable losses under the Supreme Court's holding in *Dura* reduces Gui's financial interest to just $110,265 under FIFO and $185,752 under LIFO. This is substantially less than Mathew's recoverable FIFO/LIFO loss of $226,954, approximately 50% less under FIFO and 18% less under LIFO.[3] As such, Mathew has the largest financial interest in the litigation.

---

[3] Charts depicting the calculation of Gui's, Coleman's, and Uemura's recoverable losses under *Dura* are attached as Exhibits A-C to the Fegan Decl. Mathew submitted the calculation of his recoverable loss under *Dura* with his moving papers. *See* ECF No. 21-6.

2



Mathew's superior financial interest is further confirmed when analyzing the remaining *Lax/Olsten* factors that courts in this District consider when assessing financial interest, as discussed further below. Like recoverable losses, Mathew also purchased far more net shares than any other movant.



Because Mathew has the largest financial interest in the litigation and has made a preliminary showing of typicality and adequacy, he is entitled to a strong presumption that he is the most adequate plaintiff. He is a sophisticated investor represented by one of the foremost law

firms specializing in securities class action litigation. Accordingly, Mathew respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## ARGUMENT

### A. Mathew Has The Largest Financial Interest

#### 1. Mathew Has The Largest Recoverable Loss

The PSLRA states that the presumptive Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [typicality and adequacy] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may [be] rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Kraft*, 2019 WL 4958238, at *10.

When assessing financial interest at the Lead Plaintiff stage, courts in this District— consistent with numerous others throughout the country—have held that the amount of loss "is the most critical factor in determining a moving party's financial interest." *Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763, at *3 (N.D. Ill. June 26, 2018) (collecting cases). And when calculating loss, after *Dura* and *Wong,* the overwhelming trend is to consider only losses that will be recoverable in the action and exclude losses on which an investor "cannot recover . . . [such as] losses on stock [] sales that occurred prior to any corrective disclosure" of the fraud. *Id.* at *4; *see also Kraft*, 2019 WL 4958238, at *6 (refusing to consider "losses associated with shares sold before the alleged fraud was revealed"). This makes sense given that "one's financial interest in the litigation can only consist of what one can recover in that action." *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 499 (D. Conn. 2017) (collecting cases).

Mathew has the largest financial interest in this case under the Supreme Court's holding in *Dura* and the Seventh Circuit's decision in *Wong*, as reflected in the chart below. *See* Fegan Decl. Exs. A-C. The losses below exclude losses on sales of Exicure securities prior to the first alleged corrective disclosure on November 15, 2021. *See* ECF No. 8 ¶¶3, 27.

| Movant | Recoverable Loss (LIFO) | Recoverable Loss (FIFO) |
|---|---|---|
| Mathew | $226,954 | $226,954 |
| Gui | $185,752 | $110,265 |
| Coleman | $131,413 | $130,175 |
| Uemura | $42,467 | $42,467 |

As the Seventh Circuit recognized in *Wong*, 773 F.3d at 864, the Supreme Court held in *Dura* that "[a] private plaintiff who claims security fraud must prove that the defendant's fraud caused the economic loss." Under *Dura*, "proof that a plaintiff sold an inflated security at a loss is by itself insufficient to establish loss causation." *Id*. Rather, *Dura* requires proof that "the value of the stock declined once the market learned of the deception" and thus caused an investor's shares to be worth less. *Id*. For this reason, "those class members who sold their [] stock before [] the first corrective price decline, cannot be said to have suffered economic loss caused by [defendants'] alleged fraud." *Id*. at 864-65; *see also Dura*, 544 U.S. at 342 ("if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

As a result, for purposes of evaluating a Lead Plaintiff movant's financial interest, courts in this District have disregarded losses resulting from securities transactions before the truth was disclosed. *See Kraft*, 2019 WL 4958238, at *6; *Ulta Beauty*, 2018 WL 3141763, at *4 ("a plaintiff cannot satisfy the causation element of a securities fraud claim based on an inflated price theory relating to securities sold before the fraud was revealed"). This is consistent with courts in the Second Circuit (a bastion of securities class action litigation) which "overwhelmingly agree that a

movant may only include losses that will actually be recoverable in the class action." *Teva*, 302 F. Supp. 3d at 498; *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) ("Though *Dura* concerned a motion to dismiss a securities class action, courts nonetheless apply *Dura* when considering financial interest for the purposes of appointing a lead plaintiff"); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (rejecting application of Lead Plaintiff movant that "artificially inflate[d] their losses . . . [by] includ[ing] as 'losses' sales that the [movant] made *before* the . . . revelation" of the alleged fraud) (emphasis in original); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (movant's "losses from the sale of [] shares []—prior to the [first pleaded corrective] disclosure—are not recoverable under *Dura* and cannot be considered in calculating [movant's] losses"); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) ("When selecting a lead plaintiff, courts must consider only those losses that will actually be *recoverable* in the class action") (emphasis in original); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4-5 & n.6 (E.D.N.Y. Mar. 2, 2007) ("it is clear that under *Dura* and its progeny, any losses that [movant] may have incurred before [company's] misconduct was ever disclosed . . . are not recoverable" and "courts cannot include non-recoverable losses in a calculation of each litigant's financial interest").

Other courts throughout the country to have considered the issue are largely in accord. *See Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *5, n.4 (N.D. Cal. Aug. 30, 2021) ("Ninth Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff") citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("the district court must compare the financial stakes of the various plaintiffs and determine which one has the ***most to gain*** from the lawsuit"); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019) ("So-called 'in-and-out

transactions' . . . are excluded from the calculation of approximate losses because any losses from those transactions lack a causal link to the allegedly false or misleading statements or omissions"); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) ("only those losses that are proximately caused by the defendant's fraud are recoverable. Consequently, losses incurred before disclosure of the relevant misrepresentation are not included in recoverable loss"); *Kops v. NVE Corp.*, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006) ("Under *Dura*, the Court only calculates losses incurred from sales occurring after disclosure, that is, losses proximately caused by the alleged fraud").

Given the weight of authority applying *Dura* at the Lead Plaintiff stage, it is not surprising that Gui himself embraced the notion of recoverability in his motion, stating that he should be appointed Lead Plaintiff based on his "recoverable financial interest" (ECF No. 23 at 6) and that his "losses of approximately $295,183.64 [were] suffered **as a result** of defendants' wrongful conduct as alleged in the action." ECF No. 22 at 1. In fact, the only case that Gui cites in support of his purported superior financial interest (*see* ECF No. 23 at 6) was a case decided prior to *Dura* but that still considered the element of loss causation at the Lead Plaintiff stage. *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5-6 (N.D. Ill. Mar. 15, 2005) (refusing to appoint investor as Lead Plaintiff that "sold all of its stock during the class period, many months before the alleged fraud was first revealed").

However, Gui's recoverable loss is **not** $295,183.64, but rather $110,265 under FIFO and $185,752 under LIFO. The recoverable loss number that Gui puts forward incorrectly includes losses on Gui's sales of over 537,000 shares of Exicure stock early in the Class period, **prior** to the first pleaded corrective disclosure on November 15, 2021. Gui's loss is therefore less than Mathew's recoverable loss of $226,954 under FIFO and LIFO. *See Kraft,* 2019 WL 4958238, at

7

*6 ("losses associated with shares sold before the alleged fraud was revealed . . . [are] properly excluded from the [movant's] claimed losses"); *Ulta Beauty*, 2018 WL 3141763, at *4 ("the Court will exclude losses incurred prior to both of the corrective disclosure dates"); *Bally*, 2005 WL 627960, at *6 ("Plaintiffs suing under the PSLRA must prove that the defendant's purported fraudulent statement or omission was the cause of their loss").

### 2. Mathew Purchased More Net Shares

In addition to recoverable losses, courts also routinely look to the remaining *Lax/Olsten* factors to assess financial interest: (1) the total number of shares purchased; (2) net shares purchased; and (3) total net funds expended. *See Kraft*, 2019 WL 4958238, at *3. These factors provide an objective basis to compare the financial interests of movants because losses may be impacted by sales of stock unrelated to the fraud, as discussed above. *See Manual for Complex Litigation* § 31.31 (4th ed. 2004) (explaining *Lax-Olsten* factors are "helpful 'because they look to relatively objective indicators'").

More specifically, courts applying *Dura* frequently place significant weight on the net shares factor because "the candidate with the most net shares purchased will normally have the largest potential damage recovery." *See Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011); *see also Malirov v. Eros Int'l PLC*, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) ("largest number of combined net shares" purchased is "[a]n additional factor counsel[ing] in favor of appoint[ment]"). This is because the movant that purchased the most net shares—*i.e.*, the movant who purchased and continued to hold a large number of shares through the end of the Class Period—will have a greater financial interest in the litigation because it was "left holding the bag when the fraud[] [was] revealed." *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *4 (S.D.N.Y. Apr. 19, 2005).

8

As set forth in the chart below, Mathew purchased over 132,000 net shares, 17% more than Gui, the movant with the second most net shares.

| Movant | Net Shares Purchased |
|---|---|
| Mathew | 132,103 |
| Gui | 112,666 |
| Coleman | 70,000 |
| Uemura | 25,000 |

That Gui purchased more total shares and expended more net funds than Mathew is outweighed by the fact that Mathew incurred, by far, the largest recoverable loss and purchased the most net shares by a significant margin. *See Kops*, 2006 WL 2035508, at *5 (appointing movant with "the largest financial interest because it purchased the largest net shares during the Class Period and suffered the largest loss"). Indeed, Gui's position is that the *Lax/Olsten* factors do not matter at all, and that "[t]he best yardstick by which to judge largest financial interest is the amount of loss, period." ECF No. 23 at 6. Under that "yardstick" or when looking to the *Lax/Olsten* factors, Mathew has the largest financial interest in the relief sought by the Class.

### B.     Mathew Satisfies The Relevant Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mathew otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc). To overcome the presumption entitling Mathew to appointment, the PSLRA requires "proof" of inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be rejected. *See Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *7 (N.D. Ill. June 26, 2018) (rejecting "mere speculation" that presumptive lead plaintiff is not typical or adequate).

Mathew's claims are typical because like all other class members, Mathew: (1) purchased Exicure securities during the Class Period; (2) at prices artificially inflated by Defendants'

9

materially false and misleading statements and/or omissions; and (3) was damaged as a result. *In re Groupon, Inc. Sec. Litig*, 2012 WL 3779311, at *3 (N.D. Ill. Aug. 28, 2012) (typicality satisfied when movant "purchased [] securities during the class period, paid prices allegedly inflated because of the claimed false and misleading statements by defendants, and thereby allegedly suffered damages").

Mathew likewise satisfies the adequacy requirement of Rule 23 because he is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). Mathew has a substantial financial stake in the litigation, is an experienced investor that is well-versed in business matters, and submitted a declaration describing his *bona fides* and affirming his commitment to fulfilling the fiduciary responsibilities of the Lead Plaintiff. *See* ECF Nos. 21-2; 21-6. Further, Mathew's interests are aligned with those of other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mathew and other Class members.

Mathew has further demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class, a law firm that has achieved billions of dollars in recoveries and has consistently demonstrated its ability to litigate securities class actions in an efficient and effective manner. *See* ECF No. 21 at 8-9; 21-7. In the past year alone, BFA secured resolutions totaling nearly $550 million for shareholders in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, 3:17-cv-00558-SRU (D. Conn.) ($420 million recovery pending final court approval) and *The Police Retirement System of St. Louis v. Granite Construction Inc.*, 3:19-cv-04744-WHA (N.D. Cal.) ($129 million recovery pending final court approval). There is no question that as Lead Plaintiff, Mathew will be an excellent steward for the Class.

10

### C.     Gui Does Not Trigger The Presumption

Because Mathew has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, the competing motion submitted by Gui should be denied.  *See Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical").  As noted, Coleman and Uemura already withdrew their motions.  *See* ECF Nos. 35-36.

### CONCLUSION

For the reasons discussed above, Mathew respectfully requests that the Court:  (1) appoint him as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated:  February 25, 2022

Respectfully Submitted,

/s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Proposed Lead Plaintiff*
*James Mathew*

Javier Bleichmar (*pro hac vice*)
Ross Shikowitz (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

11

*Counsel for Proposed Lead Plaintiff James Mathew, and Proposed Lead Counsel for the Class*

Brian Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Proposed Lead Plaintiff James Mathew*

12