**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| MARK COLWELL, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK,<br><br>        Defendants. | Civil Action No. 1:21-cv-06637<br>Judge John F. Kness<br>Magistrate Judge Jeffrey T. Gilbert<br><br><u>CLASS ACTION</u> |

**MARTIN GUI'S MEMORANDUM OF LAW IN**
**OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT**
<u>**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND .......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.      GUI SHOULD BE APPOINTED LEAD PLAINTIFF ......................................................... 3

     A.      Gui Has The Greatest Losses ................................................................................. 3

     B.      No Proof Exists to Rebut the Presumption in Favor of Gui ...................................... 9

II.     GUI'S CHOICE OF COUNSEL SHOULD BE APPROVED ............................................ 10

III.    ALL COMPETING LEAD PLAINTIFF MOTIONS SHOULD BE DENIED ............................... 11

CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Bang v. Acura Pharms., Inc.*,
   No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ........................................................ 8, 9

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D.Va. 2006) .................................................................................................. 6

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
   No. 11 C 8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ..................................................... 4, 9

*In re CMED Sec. Litig.*,
   No. 11 Civ. 9297 (KBF), 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ........................................ 6

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
   No. 13 C 2111, 2013 WL 3934243 (N.D. Ill. July 30, 2013) ...................................................... 5

*Cook v. Allergan PLC*,
   No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ..................................... 5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
   No. 20 Civ. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ..................................... 5, 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................................... 4, 5, 6

*Fialkov v. Celladon Corp.*,
   No. 15cv1458 AJB (DHB), 2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) ................................... 6

*In re Groupon Sec. Litig.*,
   No. 12 C 2450, 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012) ........................................ 3, 7, 9, 10

*Johnson v. Tellabs, Inc.*,
   214 F.R.D. 225 (N.D. Ill. 2002) .................................................................................................. 8

*Lax v. First Merchs. Acceptance Corp.*,
   No. 97 C 2716, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .......................................................... 7

*Mortimer v. Diplomat Pharm., Inc.*,
   No. 19 C 1735, 2019 WL 3252221 (N.D. Ill. July 19, 2019) ...................................................... 5

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................................ 7

*Robb v. Fitbit Inc.*,
   No. 16-cv-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ............................................ 4

*Roth v. Aon Corp.*,
    238 F.R.D. 603 (N.D. Ill. 2006) ............................................................................................ 6

*Saint Jermain v. Fluidigm Corp.*,
    No. 20-cv-06617-PJH, 2020 WL 7342717 (N.D. Cal. Dec. 14, 2020) ........................................ 10

*Sallustro v. Cannavest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015) ........................................................................................ 4

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
    No. 08-CV-425-GFK-PJC, 2008 WL 4826318 (N.D. Okla. Oct. 27, 2008) ................................. 9

*Silverberg v. Dryships Inc.*,
    No. 17-CV-4547 (SJF)(ARL), 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ........................... 7

*Subramanian v. Watford*,
    C.A. No. 20-cv-02652-CMA-STV, 2021 WL 1697147 (D. Colo. Apr. 29, 2021) ...................... 10

*Takara Tr. v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) ................................................................................. 3, 4, 8, 9

*Turnofsky v. electroCore, Inc.*,
    Civ. No. 19-18400, 2020 WL 1969913 (D.N.J. Apr. 24, 2020) .................................................. 10

*In re Watchguard Sec. Litig.*,
    No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ........................... 5

*Xu v. Gridsum Holding, LLC*, No. 18 Civ. 3655 (ER),
    2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ......................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................... 3, 9

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 1, 3, 8, 9

**PRELIMINARY STATEMENT**

Lead Plaintiff movant Martin Gui ("Gui") respectfully submits this memorandum of law in opposition to the competing motions for appointment as lead plaintiff and in further support of his motion for appointment as lead plaintiff and approval of selection of Bragar Eagel & Squire, P.C. ("BES") as lead counsel for the proposed Class.[1]

On February 11, 2022, four movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in the above-captioned action (the "Action"). The motions were filed by Sam Uemura ("Uemura") (ECF No. 13); Jeffrey Coleman ("Coleman") (ECF No. 17); James Mathew ("Mathew") (ECF No. 21); and Gui (ECF No. 22). Only two motions remain before the Court.[2]

Gui is presumptively the most adequate lead plaintiff because he has the largest financial interest in the Action and satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Gui has demonstrated a willingness and desire to serve and there is no basis to rebut the statutory presumption. As such, Gui should be appointed as lead plaintiff.

**BACKGROUND**

On December 13, 2021, Mark Colwell ("Colwell") filed a complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") on behalf of a class

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in Movant's opening memorandum (ECF No. 23). Unless otherwise stated, all emphasis is added and all internal citations, quotations, and alterations are omitted.
[2] On February 25, 2022, Coleman filed a notice of withdrawal of his motion (ECF No. 35). Uemura also filed a notice of withdrawal of his motion on February 25, 2022 (ECF No. 36).

consisting of all persons and entities, other than Defendants, that purchased or otherwise acquired Exicure, Inc. ("Exicure" or the "Company") securities between March 11, 2021 and November 15, 2021, inclusive. On December 13, 2021, plaintiff Colwell also duly caused a notice to be filed in a widely circulated national business-oriented wire service advising other class members of their right to seek appointment as a representative party by February 11, 2022. *See* ECF No. 23-4 (the "Notice"). On February 4, 2022, plaintiff Colwell filed an Amended Class Action Complaint (the "Amended Complaint"), extending the Class Period end date from November 15, 2021 to December 10, 2021. ECF No. 8.

The Action alleges that Defendants made materially false and misleading statements and/or omitted material adverse information during the Class Period. ¶¶ 21-26, 29, 32.[3] On November 15, 2021, after the market closed, Exicure filed a Form 12b-25 with the SEC stating that it could not timely file its quarterly report for the period ended September 30, 2021. ¶¶ 3, 27. The Form 12b-25 explained that the Company was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia." *Id*. On this news, the Company's stock price fell $0.293, or 27.4%, to close at $0.777 per share on November 16, 2021, on unusually heavy trading volume. ¶¶ 4, 28.

On November 19, 2021, before the market opened, the Company issued a press release disclosing that its Audit Committee "had retained external counsel to conduct an internal investigation" regarding the alleged improprieties. ¶¶ 5, 30. On this news, Exicure's stock price fell 30%, closing at $0.46 per share on November 19, 2021. ¶¶ 6, 31.

---

[3] Citations to "¶__" are to paragraphs of the Amended Complaint. ECF No. 8. *See also* ECF No. 23 at 2-4 (Memorandum of Points and Authorities in Support of the Motion of Martin Gui for Appointment as Lead Plaintiff and Approval of Selection of Counsel, Statement of Facts).

Finally, on December 10, 2021, after the market closed, Exicure issued a press release disclosing, *inter alia*, that "misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021," and that the data related to the efficacy of XCUR-FXN, one of the Company's pipeline therapeutics. ¶¶ 7, 33. On this news, the Company's stock price declined over 40%, closing at $0.27 per share on December 13, 2021 (the next trading day following December 10, 2021). ¶¶ 8, 34.

## ARGUMENT

### I.    GUI SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.    Gui Has The Greatest Losses

In deciding which movant to appoint as lead plaintiff in cases brought under the PSLRA, the Court should consider losses suffered by the competing movants, from largest to smallest, and appoint the movant with "largest financial interest in the relief sought by the class" who also "otherwise satisfies the requirements" of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii); *see also In re Groupon Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *2-3 (N.D. Ill. Aug. 28, 2012); *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (to determine financial interest, "most courts simply determine which potentia15 l lead plaintiff has suffered the greatest total losses"). Once identified, the movant with the largest financial interest must be appointed lead plaintiff, unless a competing movant produces sufficient proof to rebut the presumption in its favor. *Molex*, 229 F.R.D. at *579; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This analysis here finds Gui to be the most adequate lead plaintiff.

Gui's losses of $295,183.64 are the largest losses of any movants before the Court. Mathew holds the second largest losses of $226,953.90. "[T]he PSLRA does not specify how [courts] should decide which plaintiff group has the 'largest financial interest' in the relief sought, most

3

courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Molex*, 229 F.R.D. at 579.

In determining losses "the overwhelming trend . . . nationwide has been to use the LIFO" (last-in, first-out) accounting method instead of the first-in, first-out ("FIFO") accounting method in calculating losses at the lead plaintiff stage. *See* ECF No. 21 at 8 (quoting *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 270 & n.5 (S.D.N.Y. 2015)). *See also, e.g.*, *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012) ("courts in this district and others have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment of a lead plaintiff in a securities fraud case"). Mathew and all other movants' losses were either calculated using LIFO and/or provided such calculation (if sales occurred). *See* ECF No. 15-3 (Uemura Loss Chart), ECF No. 17-3 (Coleman Loss Chart), ECF No. 21-6 (Mathew Loss Chart); ECF No. 23-3 (Gui Loss Chart).

Movant Mathew states in his opening motion that losses should also be calculated using the method in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). ECF No. 21 at 5-6. That calculation favors Mathew in comparison to Gui because Mathew's *Dura's* losses are $226,953.90 as compared to Gui's *Dura* losses of $176,465.51. But courts differ on whether to use *Dura* losses at all in determining which plaintiff suffered the greatest loss at the lead plaintiff stage, or whether to use the total LIFO losses as Gui did here. As set forth above, the calculation based upon total LIFO losses clearly favors Gui.

Unlike the overwhelming adoption of LIFO as the correct accounting method to use, there is a dispute as to whether a court should then require a movant to also determine losses in accordance with *Dura*. *See, e.g.*, *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 WL 2654351, at *5 n.8 (N.D. Cal. May 10, 2016) ("The Court is not persuaded by [movant's] alternative loss

4

calculations" based on *Dura* because "movants disagree as to whether this calculation method is valid"). The Court should not do so here.

"*Dura* stands for the proposition that losses incurred before a defendant's public disclosure of misconduct are not recoverable because 'those losses cannot be proximately linked to the misconduct at issue in th[e] litigation.'" *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020). Notably, the *Dura* loss standard was adopted for establishment of loss causation at the motion to dismiss stage, not the lead plaintiff stage. *Dura*, 544 U.S. 336. Thus, the "appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute" since the impact at such an early stage is "at best uncertain, and so should be discounted". *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14-16 & n.6 (W.D. Wash. July 13, 2005) (*Dura* recognized that "numerous factors may affect the price of a security," but "***did not suggest*** that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue") (attached hereto as Exhibit A).

Courts in this District have recognized that there is disagreement on whether the *Dura* method should be applied at this stage. *See, e.g.*, *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013) ("While [Movant] will need to show causation in regard to its losses, it is premature at this juncture to determine that [Movant] or any Plaintiff will be unable to recover for losses prior to [the initial disclosure]. Such losses relating to sales at a time when prices were allegedly being artificially manipulated by Defendants may be recoverable."); *Mortimer v. Diplomat Pharm., Inc.*, No. 19 C 1735, 2019 WL 3252221, at *2-3 (N.D. Ill. July 19, 2019) (recognizing a split in considering *Dura* loss causation

5

at the lead plaintiff stage, although deciding lead plaintiff without determining whether appropriate to consider).

*Dura's* application is also rarely appropriate where there are multiple corrective disclosures as here. *See supra* Background Section (there were three corrective disclosures alleged in the Amended Complaint). As reasoned by the court in *BearingPoint*, where "there are multiple disclosures, in-and-out traders may well be able to show a loss" and "the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D.Va. 2006). *See also Roth v. Aon Corp.*, 238 F.R.D. 603, 607-08 (N.D. Ill. 2006) (determining same and citing to *BearingPoint*). Therefore, "when the complaint alleges multiple partial disclosures" the application of *Dura* to lead plaintiff loss calculations is inappropriate. *ProShares*, 2020 WL 7698321, at *3; *Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB), 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (partial corrective disclosures rejecting use of Dura loss calculations: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff."); *In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) (declining to "consider the 'Dura LIFO losses'" because "[t]he Court is not aware of any case in this Circuit" that used that method to "calculate[] losses for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures").

Under the circumstances, the Court should determine the movant with the greatest loss based on a comparison of total losses, and not on a comparison of losses that might later be limited by *Dura.* Under this analysis, Gui has the greatest loss. Moreover, with no other directive included in the PSLRA on how to calculate the "largest financial interest," courts in this District, Circuit,

6

and throughout the country also commonly consider factors other than financial losses for determining the largest financial interest. *See Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). The *Lax/Olsten* factors include: (1) the total number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *Groupon*, 2012 WL 3779311, at *2. "Courts generally consider those factors to be properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important. Financial loss, the last factor, is the most important element of the test." *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018).

As the following table demonstrates, Gui possesses the largest financial interest under three of the four *Lax* factors. Not only are the total losses that Gui has suffered $68,157.02 more than the losses of the next largest movant, Gui's net funds expended are over ***three times*** the amount of Mathew and total shares purchased are almost ***five times*** more.

| Movant | Total Shares Purchased | Net Shares Purchased During Class Period | Net Funds Expended | LIFO Losses |
|---|---|---|---|---|
| **Martin Gui** | *650,000* | 112,666 | *$1,019,828.03* | *$295,183.64* |
| **James Mathew** | 132,103 | 132,103 | $253,547.16 | $226,953.90 |
| ~~**Jeffrey Coleman**~~ | ~~75,190~~ | ~~70,000~~ | ~~$157,395.86~~ | ~~$137,446.39~~ |
| ~~**Sam Uemura**~~ | ~~25,000~~ | ~~25,000~~ | ~~$47,500.00~~ | ~~$40,176.25~~ |

In addition to the largest financial interest requirement, the PSLRA also requires that the lead plaintiff "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)

(3)(B)(iii)(I)(cc). At the lead plaintiff stage, however, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met. *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) ("In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations"); *Bang v. Acura Pharms., Inc.*, No. 10 C 5757, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (finding that the "threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements to establish a rebuttable presumption should be made by the court's independent judgment and need not be extensive.").

A lead plaintiff's claims are typical of the claims of the class if they purchased artificially inflated securities during the class period while relying on the alleged misrepresentations and suffered losses as a result. *See Molex*, 229 F.R.D. at 580 ("A lead plaintiff's claims can be considered typical if they arise out of the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [its] claims are based on the same legal theory."). A lead plaintiff satisfies the adequacy requirement with a preliminary showing that: (1) lead counsel is qualified; (2) there is no conflict between the lead plaintiff and the class; and (3) the lead plaintiff has a sufficient interest to ensure vigorous advocacy. *Acura Pharms.*, 2011 U.S. WL 91099, at *4. Here, Gui satisfies both the typicality and adequacy prongs of Rule 23, requiring his appointment as Lead Plaintiff.

Gui satisfies the typicality requirement. Like all members of the Class, Gui: (1) purchased Exicure securities during the Class Period; (2) at prices artificially inflated by the false and misleading statements and/or omissions by Defendants; and (3) suffered heavy losses as a result. Because of this, Gui's claims are substantially similar, if not identical, to those of the other members of the Class who purchased Exicure securities during the Class Period and suffered losses

8

from the alleged misconduct on the part of the Defendants. *See Acura Pharms.*, 2011 WL 91099, at *10 ("typicality met where movant purchased securities during class period at prices allegedly artificially inflated by defendants' materially false and misleading statements and movant suffered damages as a result"); *Hospira*, 2012 WL 1339678, at *8-9.

Gui also readily satisfies the adequacy requirement of Rule 23. BES, proposed lead counsel for the class, is highly experienced in securities class actions such as this and are well qualified to litigate the Action. *See* ECF No. 23-5 (firm résumé of BES). *Molex*, 229 F.R.D. at 580 (The adequacy "requirement is met if the lead plaintiff is represented by adequate counsel and has no claims that conflict with or are antagonistic to the class."). Moreover, Gui has no conflicts with absentee class members and is highly motivated to recover his losses of $295,183.64. *Id.*; *Groupon*, 2012 WL 3779311, at *3 (Movants' "substantial interest in the outcome of this case" shows a sufficient incentive to "ensure vigorous advocacy").

Gui possesses the largest financial interest and satisfies Rule 23, and therefore should be appointed lead plaintiff pursuant to the PSLRA.

## B. No Proof Exists to Rebut the Presumption in Favor of Gui

Having demonstrated that Gui is the presumptive lead plaintiff in the Action, that strong presumption can be rebutted only with proof that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Groupon*, 2012 WL 3779311, at *2 (the presumption can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff"). "The burden of proof of inadequacy of the presumptive lead plaintiff rests with parties contesting its appointment." *In re SemGroup Energy Partners, L.P., Sec. Litig.*, No. 08-CV-425-GFK-PJC, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008). Here, no such proof has been presented or burden met.

Furthermore, as detailed in Gui's Certification, he is motivated to serve as lead plaintiff and fully understands the duties of a lead plaintiff, including the selection and retention of counsel and overseeing the prosecution of the Action for the Class. ECF No. 23-2.

## II.     GUI'S CHOICE OF COUNSEL SHOULD BE APPROVED

The Court should also approve Gui's selection of BES as lead counsel for the putative class. The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class subject to approval of the Court. 15 U.S.C. § 78u-4(a) (3)(B)(v). There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention. *Groupon*, 2012 WL 3779311, at *5 ("[C]ourts typically do not disturb a lead plaintiff's selection unless it is necessary to protect the interests of the class"). BES is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors as detailed in its Firm Résumé. ECF No. 23-5. BES has been appointed as lead counsel in many similar class actions arising under the federal securities laws. *See, e.g.*, *Subramanian v. Watford*, C.A. No. 20-cv-02652-CMA-STV, 2021 WL 1697147, at *4 (D. Colo. Apr. 29, 2021) (appointing BES and noting the firm's qualifications, experience, and ability to conduct the litigation); *Saint Jermain v. Fluidigm Corp.*, No. 20-cv-06617-PJH, 2020 WL 7342717, at *5 (N.D. Cal. Dec. 14, 2020) (appointing BES as lead counsel); *Turnofsky v. electroCore, Inc.*, Civ. No. 19-18400, 2020 WL 1969913, at *16 (D.N.J. Apr. 24, 2020) (appointing BES as lead counsel, noting the firm's experience with securities class actions); *Xu v. Gridsum Holding, LLC*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *5 (S.D.N.Y. Sept. 17, 2018) (appointing BES as lead counsel, noting the firm's qualifications).

### III.     ALL COMPETING LEAD PLAINTIFF MOTIONS SHOULD BE DENIED

As detailed above, Gui has the largest financial interest in this Action, has made the *prima facie* showing of his typicality and adequacy, and there is no proof to rebut the strong presumption in favor of appointing him as lead plaintiff.  This alone is sufficient grounds for the Court to grant his motion and deny the competing motions for appointment as lead plaintiff.

**CONCLUSION**

For all the foregoing reasons, Gui respectfully requests that the Court:  (1) appoint Gui as Lead Plaintiff on behalf the Class; (2) approve Gui's selection of BES as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: February 25, 2022                         Respectfully submitted,

**LYNCH CARPENTER LLP**

*/s/ Katrina Carroll*
Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1591
Facsimile: (773) 598-5609
Email: katrina@lcllp.com

*Counsel for Martin Gui and [Proposed] Liaison Counsel for the Class*


**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email: fortunato@bespc.com
           passmore@bespc.com

*Counsel for Martin Gui and [Proposed] Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I, Katrina Carroll, the undersigned attorney, hereby certify that on the 25th day of February, 2022, I caused to be served a copy of the Memorandum of Law in Opposition to the Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel via the Court's CM/ECF system, on all counsel of record.

/s/ *Katrina Carroll*
Katrina Carroll