## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARK COLWELL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK<br><br>Defendants. | Civil Action No. 1:21-cv-06637<br>Judge John F. Kness<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**ORAL ARGUMENT REQUESTED**<br><br><u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF JAMES MATHEW FOR APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF HIS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    A.    Mathew Has The Largest Financial Interest ...................................................... 2

        1.    The Overwhelming Trend Is To Apply *Dura* ............................................2

        2.    Mathew Purchased More Net Shares Under *Lax/Olsten* ........................................9

    B.    Mathew Satisfies The Relevant Requirements Of Rule 23 ............................................. 10

    C.    Gui Does Not Trigger The Presumption .......................................................... 11

CONCLUSION.................................................................................................................... 11

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Chandler v. Ulta Beauty, Inc.*,
2018 WL 3141763 (N.D. Ill. June 26, 2018).................................................................. 2, 4, 5, 8

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ................................................................ 7

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)................................................................... 5, 8

*Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*,
2013 WL 3934243 (N.D. Ill. July 30, 2013)................................................................. 5

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)............................................................. 9

*DiScala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ............................................................ 7

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................... 2

*Fialkov v. Celladon Corp.*,
2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) ............................................................ 8

*Galmi v. Teva Pharms. Indust. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)........................................................................ passim

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ................................................................ 4, 5, 8

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)................................................................ 7

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ................................................................................ 7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..................................................................................... 11

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) .............................................................. 8

*In re Comverse Tech., Inc. Sec. Litig.*,
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)................................................................ 2, 4, 5, 9

*In re VimpelCom, Ltd. Sec. Litig.*,
2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016)..................................................................... 6

*In re WatchGuard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ....................................... 9

*Khunt v. Alibaba*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................... 6, 8

*Kops v. NVE Corp.*,
2006 WL 2035508 (D. Minn. July 19, 2006) .......................................................... 10

*Maliarov v. Eros Int'l. PLC*,
2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) .................................................... 4, 5, 10

*Mortimer v. Diplomat Pharms. Inc.*,
2019 WL 3252221 (N.D. Ill. July 19, 2019)............................................................ 5

*Pelletier v. Endo Int'l PLC*,
316 F. Supp. 3d 846 (E.D. Pa. 2018) ...................................................................... 6

*Robb v. Fitbit Inc.*,
2016 WL 2654351 (N.D. Cal. May 10, 2016)........................................................... 5

*Roth v. Aon Corp.*,
238 F.R.D. 603 (N.D. Ill. 2006)............................................................................. 7

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015) ................................................................... 3, 6

*Schueneman v. Arena Pharms., Inc.*,
2011 WL 3475380 (S.D. Cal. Aug 8, 2011) ....................................................... 6, 10

*Silverberg v. Dryships, Inc.*,
2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018)........................................................ 6

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ...................................................................... 6

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .............................................................................. 2, 7

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................... 10

**PRELIMINARY STATEMENT**

There is no dispute that Mathew asserts the largest *recoverable* loss in this case.[1]  As a result, he has the largest financial interest in the litigation consistent with the Supreme Court's ruling in *Dura*, the Seventh Circuit's decision in *Wong*, as well as the overwhelming trend of courts in this District and elsewhere.  There is also no dispute that Mathew will provide the Class with excellent representation; he is an experienced investor with business acumen who has selected one of the most highly regarded law firms specializing in securities class action litigation to represent him and the Class in this complex litigation.

The only movant to oppose Mathew's motion is Gui.  Because Gui cannot claim the greatest recoverable loss, he urges the Court to ignore *Dura* and *Wong*.  Those decisions make clear that a substantial portion of Gui's losses are not recoverable in this litigation.  The timing of the corrective disclosures as pleaded in the complaint and as adopted by Gui demonstrate that *63%* (under FIFO) and *37%* (under LIFO) of Gui's losses resulted from "in-and-out" transactions that have no connection to the fraud.

Gui does not offer a good reason to depart from *Dura* or *Wong*.  He also has not explained why, after stating in his initial motion that he should be appointed based on his "recoverable financial interest," (ECF No. 23 at 6) he reversed course here to claim that applying *Dura* is "rarely appropriate."  ECF No. 38 at 6.  Gui now claims that the Court can most reliably assess financial interest by taking his losses at face value without conducting *any* analysis of his recoverable loss.

This approach is unreliable, and courts have rejected it.  A "lack of inquiry [in not applying *Dura*] would not serve the purposes of the PSLRA, which seeks to hand the reigns of class action

---

[1] Capitalized terms are defined in Mathew's initial and opposition briefs (ECF Nos. 21, 37), all emphasis is added, and internal quotations and citations are omitted, unless otherwise indicated.

litigation to the most adequate plaintiff." *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 500 (D. Conn. 2017). What's more, courts in this District and elsewhere have rejected attempts like Gui's here to "change horses midstream" by first embracing one position and then abandoning it only "after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method." *Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763, at *4 n.5 (N.D. Ill. June 26, 2018). Accordingly, the Court should apply *Dura* and determine that Mathew has the largest financial interest.

## ARGUMENT

### A.      Mathew Has The Largest Financial Interest

#### 1.      The Overwhelming Trend Is To Apply *Dura*

As the Seventh Circuit recognized in *Wong*, the Supreme Court held in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), that recoverable losses in securities fraud actions include only those proximately caused by fraud. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). If "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss" and the purchaser cannot recover under the federal securities laws. *Dura*, 544 U.S. at 342.

The "overwhelming[]" trend is to apply *Dura* at the Lead Plaintiff stage. *Teva*, 302 F. Supp. 3d at 498. This is because determining which investor has the "largest financial interest" in this case requires assessing which investor has the largest loss that will be recoverable in the action. *See Ulta Beauty*, 2018 WL 3141763, at *4. "[W]here (as here) it is clear from the face of the pleadings that most of [an investor's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at [the Lead Plaintiff] stage." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007); *see also Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273-74

2

(S.D.N.Y. 2015) ("[t]he court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage" because it would be "irreconcilable with this Court's duty to ascertain which plaintiff has the greatest financial interest"). Such a "lack of inquiry would not serve the purposes of the PSLRA, which seeks to hand the reigns [] to the most adequate plaintiff." *Teva*, 302 F. Supp. 3d. at 500.

Here, there is no dispute that investors could not have incurred recoverable losses *prior* to November 15, 2021. Neither the initial nor amended complaint pleads a disclosure of Defendants' misconduct *before* November 15, 2021. *See* ECF Nos. 1 ¶¶3-4, 22-23; 8 ¶¶3-4, 27-28. Moreover, Gui agreed in his initial and opposition briefs that November 15, 2021 is the earliest date an investor could have incurred recoverable losses in this action. *See* ECF Nos. 23 at 3; 38 at 2. There is also no dispute that a substantial portion of Gui's losses resulted from his sales of Exicure stock *before* that November 15 disclosure. Eliminating these non-recoverable losses reduces Gui's loss to $110,265 under FIFO and $185,752 under LIFO. This is substantially less than Mathew's recoverable loss of $226,954, approximately 50% less under FIFO and 18% less under LIFO.



Faced with a smaller *Dura* loss than Mathew, Gui does not offer a good reason why the Court should "abdicat[e] its responsibility" under the PSLRA to select the investor with the "largest financial interest," which here, requires an application of *Dura. Comverse*, 2007 WL 680779, at *5.[2]  This is particularly true where, as here, Gui repeatedly embraced the notion of recoverability in his motion.  *See* ECF Nos. 22 at 1; 23 at 1, 6.  And Gui fails to present any possible scenario under which he could recover more than Mathew in this action.

Instead, Gui offers three unpersuasive reasons for this Court to ignore *Dura*.  **First**, while Gui claimed in his initial motion that he should be appointed to lead this case based on his "recoverable financial interest" (ECF No. 23 at 6), he now claims that "*Dura's* application is [] rarely appropriate where there are multiple corrective disclosures as here." ECF No. 38 at 6.  As an initial matter, courts reject such eleventh-hour shifts in strategy as gamesmanship.  *See Ulta Beauty*, 2018 WL 3141763, at *4 n.5 ("courts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method"); *Maliarov v. Eros Int'l. PLC*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) ("[t]he specter of gamesmanship [] causes the Court to question whether [movant] will fairly and adequately protect the interests of the class").

Further, Gui is wrong on the law.  Whether there is one or multiple pled partial disclosures is of no moment.  The law is clear that determinations of financial interest must be based on the facts "alleged in the complaints" on file, which here, allege multiple disclosures.  *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *6 (N.D. Ill. Oct. 8, 2019); *see also Eros,* 2016 WL 1367246, at

---

[2] Gui states that his "*Dura* loss[es] [are] $176,465.51." ECF No. 38 at 4.  He offers no support for that assertion.  Mathew submitted charts prepared by counsel that calculate Gui's *Dura* loss. *See* ECF No. 37-2.  Whether the Court accepts Mathew's calculations or Gui's assertion, the information still leads to the conclusion that Mathew has the largest financial interest.

4

*3 ("determinations of largest financial interest must be based on the facts alleged in the complaint"); *Comverse*, 2007 WL 680779, at *5 ("*Dura* [and its progeny] . . . require a court to make pre-discovery loss causation determinations . . . that are based on the facts alleged in the complaint"); *Teva*, 302 F. Supp. 3d at 498-99 ("when calculating a proposed lead plaintiff's estimated losses, the court should not include losses resulting from [] transactions, which took place . . . before the misconduct identified in the complaint was ever revealed to the public").

Indeed, multiple cases in this District applied *Dura* at the Lead Plaintiff stage when there were multiple alleged corrective disclosures. *See Kraft*, 2019 WL 4958238, at *6 (applying *Dura* at Lead Plaintiff stage despite presence of multiple "disclosures alleged in the complaints"); *Ulta Beauty*, 2018 WL 3141763, at *4 ("the Court will exclude losses incurred prior to both of the corrective disclosure dates from the losses claimed by the [movant]").[3] Courts throughout the Country are largely in accord. *See City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4-5 (S.D.N.Y. Feb. 4, 2021) ("[t]he Court thus sees no reason not to apply *Dura* here" in case where "partial disclosures occurred throughout the class period"); *Teva*, 302 F. Supp. 3d at 492, 498 (in case involving multiple disclosures, "[a]lthough *Dura* was a case that involved the pleading standards for alleging loss causation, its reasoning has been extended to the

---

[3] While Gui claims that "[c]ourts in this District have recognized that there is disagreement on whether the *Dura* method should be applied at this stage" (ECF No. 38 at 5), his cited authority supports Mathew. *Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*, 2013 WL 3934243, at *3-5 (N.D. Ill. July 30, 2013) predates *Wong*, *Kraft* and *Ulta Beauty* and declined to apply *Dura* because the proponent of the method advocated for it "only after [it] discovered that it did not have the largest loss amount." Here, Mathew has been consistent, and it is Gui's shifting positions that raise the specter of gamesmanship. *Mortimer v. Diplomat Pharms. Inc.*, 2019 WL 3252221, at *2-3 (N.D. Ill. July 19, 2019) likewise reiterated that "some courts [] frown upon a movant switching theories midstream" and found that it "need not determine whether it is appropriate to apply *Dura* [] at this stage." And *Robb v. Fitbit Inc.*, 2016 WL 2654351, at *5 n.8 (N.D. Cal. May 10, 2016), declined to apply *Dura* because a movant only advocated for the method "[i]n its opposition and reply briefs."

context of a motion for appointment as lead plaintiff"); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 848-49 (E.D. Pa. 2018) (finding that "losses that were incurred before any disclosure . . . are not recoverable" in case with "three corrective disclosures"); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 612-13, 617-18 (S.D.N.Y. 2015) (explaining in case with eight disclosures that "[w]hen selecting a lead plaintiff, courts must consider only those losses that will actually be recoverable in the class action"); *In re VimpelCom, Ltd. Sec. Litig.*, 2016 WL 5390902, at *2 (S.D.N.Y. Sept. 26, 2016) (applying *Dura* at Lead Plaintiff stage when complaint alleged four disclosures); *Khunt v. Alibaba*, 102 F. Supp. 3d 523, 528, 532 (S.D.N.Y. 2015) (assessing *Dura* when complaints alleged multiple corrective disclosures); *Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *1, 3 (S.D. Cal. Aug 8, 2011) (same).

In fact, Gui's own cited authority supports the application of *Dura* in this case. Gui relies on *Silverberg v. Dryships, Inc.*, 2018 WL 10669653, at *5 (E.D.N.Y. Aug. 21, 2018) to claim that "loss [] is the most important element" of financial interest (ECF No. 38 at 7), but fails to state that *Dryships* held that "[w]hen evaluating financial loss, courts must consider ***only those losses that will actually be recoverable in the class action.***"

Further, while Gui cites *Cannavest*, 93 F. Supp. 3d at 270, n.5 to claim that "the overwhelming trend . . . nationwide has been to use the LIFO [] accounting method" (ECF No. 38 at 4), he omits that *Cannavest **involved multiple disclosures and still applied Dura*** at the Lead Plaintiff stage, specifically holding that "[T]he court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage." *Id.* at 268, 272-74.

To be clear, Mathew does not dispute that LIFO is the most appropriate accounting methodology, just that it must be modified to account for *Dura* given the timing of Gui's losses

6

prior to any corrective disclosures. Gui's reliance on cases that simply address the LIFO "losses suffered by the competing movants . . . is unhelpful to the court because those cases do not adequately consider which losses should be considered." *Teva*, 302 F. Supp. 3d at 499.[4]

And the ***only*** case Gui cited in his initial brief to support his purported superior financial interest (*see* ECF No. 23 at 6) considered the element of loss causation at the Lead Plaintiff stage. *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5-6 (N.D. Ill. Mar. 15, 2005) (refusing to appoint investor as Lead Plaintiff that "sold all of its stock during the class period, many months before the alleged fraud was first revealed"). That Gui now quietly attempts to walk away from *Bally* in his opposition brief, only ***after*** learning that he did not have the largest recoverable loss, is telling.

Gui's reliance on *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) for the proposition that "where… there are multiple disclosures, in-and-out traders may well be able to show a loss" (ECF No. 38 at 6) is misplaced. *BearingPoint* is a 16-year-old decision on class certification that was issued just months after *Dura* and relies largely on pre-*Dura* authority. That decision is also in tension with the Seventh Circuit's decision in *Wong*, which found that "class members who sold their [stock] before [] the first corrective price decline [*i.e.,* in-and-out traders] cannot be said to have suffered economic loss caused by [the] alleged fraud." *Wong*, 773 F.3d at 864-65. Gui's citation to *Roth v. Aon Corp.*, 238 F.R.D. 603, 607-08 (N.D. Ill. 2006) is unpersuasive for similar reasons. In any event, Gui fails to explain how he could show a recoverable loss for his in-and-out trades ***in this case***.[5]

---

[4] Gui's citation to *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012), for instance, is inapposite for this reason.

[5] Gui's remaining authority is distinguishable. In *DiScala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020), the allegations in the complaint were

7

***Second***, Gui suggests that applying *Dura* would be premature because "the *Dura* loss standard was adopted for establishment of loss causation at the motion to dismiss stage, not the lead plaintiff stage." *See* ECF No. 38 at 5. This ignores that a broad consensus of courts, particularly recently, has adopted *Dura* when determining the investor with the largest financial interest at the Lead Plaintiff stage of the litigation, as discussed above. *See Citigroup*, 2021 WL 396343, at *3 ("[t]hough *Dura* concerned a motion to dismiss a securities class action, courts nonetheless apply *Dura* when considering financial interest for the purposes of appointing a lead plaintiff"); *Alibaba*, 102 F. Supp. 3d at 531 (rejecting argument that treats "*Dura* as a merits decision that should not control at this stage of the litigation"); *Kraft*, 2019 WL 4958238, at *6 (applying *Dura* at Lead Plaintiff stage); *Ulta Beauty*, 2018 WL 3141763, at *4 (same).

***Third***, Gui suggests that courts have refused to apply *Dura* when "the impact at such an early stage is at best uncertain, and so should be discounted." ECF No. 38 at 5. But as discussed above, there is nothing uncertain about the application of *Dura* in this case. There is no dispute that the first corrective disclosure occurred on November 15, 2021. There is no dispute that all Gui's sales occurred prior to that first disclosure. Neither the initial nor amended complaint identifies a disclosure prior to November 15, 2021. And Gui acknowledges that the first disclosure occurred on that date. *See* ECF Nos. 23 at 3; 38 at 2. *Dura* is particularly reliable here because

---

"insufficient to establish the date of [the company's] first corrective disclosure." *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) appointed the investor with the largest individual *Dura* loss and simply declined to endorse a novel *Dura* loss methodology that "decline[d] to account for the purchase price of shares." Similarly, *In re CMED Sec. Litig.*, 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) refused to apply a loss method that disregarded purchase price and considered "only the number of shares purchased during the class period that are retained at the end of the class period." Mathew's loss methodology accounts for the purchase price of Exicure shares.

"it is clear from the face of the pleadings that [a substantial portion of movant's] losses were suffered before any alleged corrective disclosure." *Comverse*, 2007 WL 680779, at *5.

In any event, it would be "unfair to speculate that [the movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof." *Teva*, 302 F. Supp. 3d at 502. Permitting such speculation would encourage proposed Lead Plaintiffs to "overstate their losses at the outset of a lawsuit," in the hope that, by the time their true interest is revealed, it is "too late to appoint a more deserving lead plaintiff." *Comverse*, 2007 WL 680779, at *6.

Gui's reliance on *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019), is misplaced. That case did not apply *Dura* because "it [was] not clear where a *Dura* analysis would lead" because the "fraud premium may have varied throughout the Class Period" and applying *Dura* did "not necessarily alter [the] conclusion" of which movant had the largest financial interest. *Id.* Here, Gui does not claim that there was variation in the fraud premium throughout the Class Period (*i.e.*, the amount the stock was inflated by the alleged fraud), and it is clear from the face of the pleadings that Mathew has the largest financial interest under *Dura*. Even if Gui did claim that the fraud premium varied, there is no dispute that all Gui's sales occurred **prior** to the first alleged disclosure, before there could have been any variation. Similarly, *In re WatchGuard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-16, n.6 (W.D. Wash. July 13, 2005) (*see* ECF No. 38-1), simply found that there were "unknown factors" that counseled against *Dura*'s application. Nothing is unknown here. As such, the Court should apply *Dura* and determine that Mathew has the largest financial interest.

### 2. Mathew Purchased More Net Shares Under *Lax/Olsten*

Recognizing that his motion fails, Gui attempts another about-face to claim that he should be appointed based on the *Lax/Olsten* factors. ECF No. 38 at 6-7. This conflicts with Gui's initial

9

motion—that he filed **before** recognizing he did not assert the largest recoverable loss—in which Gui represented that "[t]he best yardstick by which to judge largest financial interest is the amount of loss, period." ECF No. 23 at 6. The "specter of gamesmanship on these facts" is concerning and counsels against Gui's appointment. *Eros*, 2016 WL 1367246, at *4.

Regardless, as Mathew made clear in his opposition brief (ECF No. 37 at 8-9), courts applying *Dura* frequently place significant weight on the net shares factor because "the candidate with the most net shares purchased will normally have the largest potential damage recovery." *See Arena Pharms.*, 2011 WL 3475380, at *4; *see also Eros*, 2016 WL 1367246, at *5 ("largest number of combined net shares" purchased is "[a]n additional factor counsel[ing] in favor of appoint[ment]"). That Gui purchased more total shares and expended more net funds than Mathew is outweighed by the fact that Mathew incurred, by far, the largest recoverable loss and purchased the most net shares by a significant margin. *See Kops v. NVE Corp.*, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006) (applying *Dura* and appointing movant with "the largest financial interest because it purchased the largest net shares during the Class Period and suffered the largest loss"). Gui cites no authority to the contrary.

**B.    Mathew Satisfies The Relevant Requirements Of Rule 23**

Mathew is a typical and adequate Class representative and no movant has offered any "proof" of inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mathew submitted a Declaration describing his background, showing that he is a sophisticated investor experienced in business, and affirming his commitment to fulfilling the fiduciary responsibilities of the Lead Plaintiff. *See* ECF Nos. 21-2; 21-6. Mathew has further demonstrated his adequacy by selecting BFA—a law firm that has achieved billions of dollars in recoveries, including $550 million in the past year alone in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, 3:17-cv-00558-SRU (D. Conn.) ($420 million recovery pending final court approval) and *The Police Retirement System*

10

*of St. Louis v. Granite Construction Inc.*, 3:19-cv-04744-WHA (N.D. Cal.) ($129 million recovery pending final court approval)—as Lead Counsel to represent the Class.

### C.      Gui Does Not Trigger The Presumption

Because Mathew has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, Gui's motion should be denied. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("[t]he statutory process is sequential: [t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical").

### CONCLUSION

For the reasons discussed above, Mathew respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: March 4, 2022

Respectfully Submitted,

/s/ *Elizabeth A. Fegan*
Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Proposed Lead Plaintiff*
*James Mathew*

Javier Bleichmar (*pro hac vice*)
Ross Shikowitz (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

11

*Counsel for Proposed Lead Plaintiff James Mathew, and Proposed Lead Counsel for the Class*

Brian Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Proposed Lead Plaintiff James Mathew*

12