**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| MARK COLWELL, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>     v.<br><br>EXICURE, INC., DAVID A. GILJOHANN, and BRIAN C. BOCK,<br><br>       Defendants. | Civil Action No. 1:21-cv-06637<br>Judge John F. Kness<br>Magistrate Judge Jeffrey T. Gilbert<br><br><u>CLASS ACTION</u> |

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF MARTIN GUI'S MOTION FOR APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .................................................................................................................... 2

CONCLUSION .................................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Cases**

*In re Bally Total Fitness Securities Litigation*,
  No. 04 C 3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ......................................................... 4

*Blitz v. AgFeed Indus., Inc.*,
  No. 11-cv-0992, 2012 WL 1192813 (M.D. Tenn. Apr. 10, 2012) .................................................. 3

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
  No. 1:17 CV 1677, 2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ................................................. 6

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
  No. 20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ............................................... 3

*Cook v. Allergan PLC*,
  No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ....................................... 5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  No. 20 Civ. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ....................................... 3

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ..................................................................................................................... 1

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................................. 3

*Khunt v. Alibaba Grp. Holdings Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......................................................................................... 4

*Kops v. NVE Corp.*,
  No. 06-574, 2006 WL 2035508 (D. Minn. July 19, 2006) ............................................................ 4

*Lax v. First Merchs. Acceptance Corp.*,
  No. 97 C 2716, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ........................................................... 2

*Leavitt v. Alnylam Pharms., Inc.*,
  378 F. Supp. 3d 60 (D. Mass. 2019) ............................................................................................ 4

*Li Hong Cheng v. Can. Goose Holdings Inc.*,
  No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ......................................... 6

*Nicolow v. Hewlett Packard Co.*,
  No. 12-05980-CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ................................................. 5

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .............................................................................................. 2

*Pelletier v. Endo International PLC*,
  316 F. Supp. 3d 846 (S.D.N.Y. 2018) ........................................................................... 4

*Pio v. GM Co.*,
  No. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ................................... 2, 6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ................................................................................... 2

*Richman v. Goldman Sachs Group, Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................... 6

*Takara Tr. v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005) ................................................................................... 2

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015) .............................................................................. 4

*In re Watchguard Sec. Litig.*,
  No. C05-678, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ................... 2

*Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v.*
  *Brixmor Prop. Grp., Inc.*,
  No. 16-CV-02400 (AT)(SN), 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ............. 6

*Xu v. FibroGen, Inc.*,
  No. 21-cv-02623-EMC, 2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ....................... 4

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................. 1

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ 1

iii

## PRELIMINARY STATEMENT

Lead Plaintiff movant Martin Gui ("Gui") respectfully submits this reply memorandum in response to the competing motion for appointment as lead plaintiff and in further support of his motion for appointment as lead plaintiff and approval of selection of Bragar Eagel & Squire, P.C. ("BES") as lead counsel for the proposed Class.[1]

The PSLRA provides a "rebuttable presumption" that "the most adequate lead plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class" and satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Neither Gui's nor competing movant James Mathew's ("Mathew") Rule 23 adequacy has been questioned here. The sole determinative issue is which movant has "the largest financial interest in the relief sought." The overwhelming majority of courts find the most important "financial interest" measurement to be "financial losses," with LIFO being the most accepted accounting method used in making such a determination.

Mathew only has a purportedly larger financial loss if *Dura* is applied. ECF No. 38 at 6 (Gui's opposition to competing motions, the "Opposition"); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). But Mathew does not grapple with the disagreement as to whether *Dura*'s loss causation method is applicable to lead plaintiff financial loss determinations, as discussed in Gui's Opposition. Using a straight LIFO measurement, one of the few financial loss measurements courts overwhelmingly agree on, Gui's financial losses of $295,183.62 are clearly the largest. Additionally, comparing the also commonly agreed upon "financial interest" *Lax/Olsten* factors, Gui's interest is the largest, with three out of the four factors favoring Gui.

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in Gui's opening memorandum (ECF No. 23). Unless otherwise stated, all emphasis is added and all internal citations, quotations, and alterations are omitted.

Opposition at 6-7; *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). Therefore, Gui should be appointed lead plaintiff in this Action.

## **ARGUMENT**

The PSLRA does not indicate how a court should measure a movant's "financial interest." *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). "[B]y not specifying a method for determining the largest financial interest and stating instead that the determination is the court's, the PSLRA appears to discourage any such [detailed] inquiry and prefer that the court make the determination based on whatever factors seem most appropriate under the facts of the case before it." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623-24 (E.D. Wis. 2009); *see also Molex*, 229 F.R.D. at 579.

In determining a movant's financial interest, a court should consider that "all factors that may impact whether class members' securities were affected by defendant's alleged misconduct may not yet be known early in the litigation when the lead plaintiff determination must be made." *Pio v. GM Co.*, No. 14-11191, 2014 WL 5421230, at *3 (E.D. Mich. Oct. 24, 2014) (citing *In re Watchguard Sec. Litig.*, No. C05-678, 2005 U.S. Dist. LEXIS 40923, at *14-16 & n.6 (W.D. Wash. July 13, 2005)) (attached to the Opposition as Exhibit A). As aptly explained by the court in *Pio*:

> It is worth emphasizing at this juncture that the fourth *Lax* factor is intended to be only an *approximation* of the losses suffered during the class period by the prospective lead plaintiffs. The narrow window Congress provided district courts to resolve competing motions for lead plaintiff appointment is not the time for conducting a precise calculation of each movant's actual damages, which in a securities fraud case generally is a highly technical task that usually involves a battle of experts. At this early stage of the litigation, the court should not be wading through complex or fact-dependent arguments relative to the parties' calculations, nor should it be combing through competing expert reports or analyzing and resolving which attacks to credit by a party or its expert on the loss calculations of the opposing party.

2014 WL 5421230, at *6 (emphasis in original).  *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("Calculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the stock's 'true' value absent the alleged fraud.").  The complicated damages calculation process and hazards of applying *Dura* at this stage are readily demonstrated here where both Gui and Mathew have performed such an analysis with differing results.  *Cf.* Opposition at 4 and ECF No. 37 at 5.

Mathew does not have the largest financial losses.  He can only claim differently if a *Dura* measurement is applied.  ECF No. 37 at 4-5.  This ignores that there is disagreement among courts as to whether *Dura* should be applied during the lead plaintiff stage.  *See* Opposition at 5-6; *see also, e.g.*, *Blitz v. AgFeed Indus., Inc.*, No. 11-cv-0992, 2012 WL 1192813, at *4 (M.D. Tenn. Apr. 10, 2012) ("*Dura*, however, was not a case involving the appointment of a Lead Plaintiff under the PSLRA and *Dura* does not discuss FIFO or LIFO losses.").  Furthermore, this Action includes multiple corrective disclosures which courts have found to negate the use of *Dura*.  *E.g.*, *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020) (declining to apply *Dura* where complaint alleged first partial corrective disclosure as April 3, 2020, and movant sold shares prior to that date).

Mathew's cited authorities recognize the split of authority regarding applying *Dura* in the lead plaintiff context.  ECF No. 37 at 4-7.  The court in *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.* (*see* ECF No. 37 at 6) explicitly recognized that "some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if a case involves multiple disclosures . . . ." No. 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (also stating that

3

"courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition" to state that they have the "greater loss").

Additionally, many of the cases Mathew cites included case specific reasoning for applying *Dura* and/or are factually distinguishable from this Action. For example, there were no partial corrective disclosures in a number of the cases relied on by Mathew. *See Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64, 66 (D. Mass. 2019) (single disclosure and highest *Dura* loss movant also had largest interest based on other three *Lax* factors); *Khunt v. Alibaba Grp. Holdings Ltd.*, 102 F. Supp. 3d 523, 528 (S.D.N.Y. 2015) (single disclosure); *Kops v. NVE Corp.*, No. 06-574, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006) (single disclosure and movant sold all of his shares prior to). In both *Topping v. Deloitte Touche Tohmatsu CPA* and *In re Bally Total Fitness Securities Litigation*, the movants had sold all shares prior to the first corrective disclosure. *Topping*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015); *Bally*, No. 04 C 3530, 2005 WL 627960, at *5-6 (N.D. Ill. Mar. 15, 2005) (movant sold all shares in 2002 when first disclosure did not occur until 2004). In *Pelletier v. Endo International PLC*, the main deciding factor for the court was that one movant was an institution. 316 F. Supp. 3d 846, 853 (S.D.N.Y. 2018). Last, in *Xu v. FibroGen, Inc.*, the movant with the largest *Dura* losses also had the largest straight LIFO losses. No. 21-cv-02623-EMC, 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021) ("the Retirement Systems have the greatest financial interest in the litigation, whether measured as actual losses suffered or potential recovery under *Dura*").

Setting aside the *Dura* factor, both Gui and Mathew agree that "financial interest" is also commonly determined using the four *Lax/Olsten* factors. Opposition at 6-7; ECF No. 37 at 8-9. Under the preferred LIFO method for calculating losses, Mathew's financial losses of $226,994

are over $68,000 less than Gui's losses of $295,183.64 (*see* Opposition at 7).[2] Gui's losses (if using straight LIFO), net funds expended, and total shares purchased are all greater than Mathew's, as demonstrated in the chart below.

| **Movant** | **Total Shares Purchased** | **Net Shares Purchased During Class Period** | **Net Funds Expended** | **LIFO Losses** |
|---|---|---|---|---|
| **Martin Gui** | 650,000 | 112,666 | $1,019,828.03 | $295,183.64 |
| **James Mathew** | 132,103 | 132,103 | $253,547.16 | $226,953.90 |

The fourth *Lax/Olsten* factor, approximate losses suffered, is usually viewed as the most important factor, and this factor favors Gui. Opposition at 7. Mathew wrongly asserts that Gui's position is that the *Lax/Olsten* factors do not matter at all because Gui's opening motion referenced the fact that approximate losses are viewed as the best measurement by courts. ECF No. 37 at 9. Mathew agreed in his opening brief that losses suffered was the most important *Lax/Olsten* factor. ECF No. 21 at 5 ("Most courts agree that the most important *Lax/Olsen* factor in determining a movant's financial interest is the approximate losses suffered."). Then, in his opposition, after seeing all movants' information and that his net shares purchased were the largest, Mathew now argues that net shares purchased is the most important factor. ECF No. 37 at 8-9. Courts have repeatedly admonished such gamesmanship maneuvers. *See, e.g.*, *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (declining to consider movant's loss calculation methodology where movant "alter[ed] its calculation when it learned that someone else had a larger loss"); *Nicolow v. Hewlett Packard Co.*, No. 12-05980-CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (noting that movant "shift[ed] its argument only after

---

[2] Mathew's additional FIFO calculations should be disregarded. As stated in the Opposition, LIFO is well-recognized as the appropriate accounting method, not FIFO. Opposition at 4.

PGGM came forward with larger LIFO losses"). And importantly, courts have repeatedly rejected the usage of net shares purchased as the most relevant factor in cases like this one where there are multiple corrective disclosures. *See, e.g.*, *Li Hong Cheng v. Can. Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019).

Gui's total funds expended are over 75% more than Mathew's which carries more weight than Mathew's greater net shares purchased. Numerous courts have stated that the import of each *Lax/Olsten* factor is as ordered from least to greatest, meaning total net funds expended (Factor 3) is more important than net shares purchased (Factor 2). Opposition at 7; *see also Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 474 (S.D.N.Y. 2011). Thus, Mathew's request that the Court give little weight to the fact that Gui's net funds expended and total shares purchased are larger should be denied. ECF No. 37 at 9.

Furthermore, the specific comparable details on financial losses and the additional *Lax/Olsten* factors here weigh in favor of finding that Gui has the "largest financial interest." Where resolution solely on the fourth factor is dependent on differing methods put forth by movants and/or the difference between losses is minimal, courts routinely give more weight to the first three *Lax/Olsten* factors. *See, e.g.*, *Pio*, 2014 WL 5421230, at *4-5 (where competing loss calculation methods used, considered first three factors which favored one movant); *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) (appointing movant with losses 16% less than competing movant where other three factors "overwhelmingly favor[ed]" the movant) (collecting cases); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (considered all factors where loss differential only $35,406). If the Court were to view losses

through the *Dura* analysis (although it should not do so), Mathew's losses are only $41,202, or 18.1%, more than Gui's. Similarly, Mathew's net shares purchased are only slightly larger than Gui's, by approximately 14.7%. Conversely, Gui's LIFO losses are over 23% higher, his net funds expended over 75% higher, and his total shares purchased almost 80% greater than Mathew's. This analysis, whether applying Mathew's requested *Dura* application or not, shows Gui to be the movant with the largest financial interest with an overwhelmingly greater interest on two of the four factors and overall greater interest on three of the four factors using straight LIFO calculations. Therefore, Gui should be appointed as lead plaintiff in the Action.

## CONCLUSION

For the reasons discussed herein, and in Gui's opening memorandum and Opposition, the Court should appoint Gui as Lead Plaintiff and approve his selection of BES as Lead Counsel for the Class.

Dated: March 4, 2022

Respectfully submitted,

**LYNCH CARPENTER LLP**

*/s/ Katrina Carroll*
Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1591
Facsimile: (773) 598-5609
Email: katrina@lcllp.com

*Counsel for Martin Gui and [Proposed] Liaison Counsel for the Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5858

7

Facsimile: (212) 214-0506
Email: fortunato@bespc.com
       passmore@bespc.com

*Counsel for Martin Gui and [Proposed] Lead*
*Counsel for the Class*

8

## CERTIFICATE OF SERVICE

I, Katrina Carroll, the undersigned attorney, hereby certify that on the 4th day of March, 2022, I caused to be served a copy of the Memorandum of Law in Opposition to the Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel via the Court's CM/ECF system, on all counsel of record.

/s/ *Katrina Carroll*
Katrina Carroll

9