IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK COLWELL,<br><br>  Plaintiff,<br><br>v.<br><br>EXICURE INC. *et al.*,<br><br>  Defendants. | No. 21-cv-06637<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

In this securities class action, James Mathew and Martin Gui have separately moved for appointment as lead plaintiff and approval of their selection of lead counsel. For the reasons that follow, James Mathew's motion (Dkt. 19) is granted; James Mathew is appointed lead plaintiff, and Bleichmar Fonti & Auld LLP is appointed lead counsel. Martin Gui's motion (Dkt. 22) to be appointed lead plaintiff is denied.

**I.     BACKGROUND**

**A.     The Class Action**

Plaintiff Mark Colwell filed this securities class action against Defendants Exicure, Inc. ("Exicure"), David A. Giljohann, and Brian C. Bock,[1] alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"). (Dkt. 8.) The amended

---

[1] According to the amended complaint, Exicure is "a clinical stage biotechnology company that develops therapeutics for neurology, immune-oncology, inflammatory diseases, and other genetic disorders based on its proprietary spherical nucleic acid technology." (Dkt. 8 ¶ 20.) David A Giljohann was Exicure's CEO from November 2013 to December 2021 and served as the interim CFO from September 2020 to May 2021. (*Id.* ¶ 17.) Brian C. Bock has been Exicure's CFO since May 2021 and as CEO since December 2021. (*Id.* ¶ 18.)

complaint alleges a class period beginning on January 7, 2021 and extending through December 10, 2021. (*Id.* ¶ 1.) Colwell alleges that throughout 2021, Exicure issued several positive public statements about its neurology pipeline for the treatment of Friedreich's Ataxia ("FA"). (*Id.* ¶¶ 21–25.) Colwell contends that Exicure's statements were "materially false and/or misleading" because they failed to disclose to investors problems in Exicure's preclinical FA program. (*Id.* ¶ 26.) Colwell identifies several public facing disclosures that Exicure issued over November and December 2021. (*Id.* ¶¶ 27–34.) Exicure's first disclosure was a Form 12b-25 filed with the U.S. Securities and Exchange Commission ("SEC") on November 15, 2021. Exicure stated that it was investigating "a claim made by a former [Exicure] senior researcher regarding alleged improprieties" involving Exicure's preclinical FA program. (*Id.* ¶ 27.) Colwell alleges that, after Exicure filed the Form 12b-25, Exicure's stock price "fell $0.293, or 27.4%, to close at $0.777 per share on November 16, 2021, on unusually heavy trading volume." (*Id.* ¶ 28.) After Exicure issued further press releases, Exicure's stock price suffered similar precipitous declines. (*Id.* ¶¶ 30, 34.)

      **B.**      **Requirements for Appointing Lead Plaintiff under the PSLRA**

The Private Securities Litigation Reform Act ("PSLRA") requires courts to appoint a lead plaintiff in private class actions to represent the purported plaintiff class. 15 U.S.C. § 78u-4(a)(3)(B). Courts must appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). To determine the most adequate plaintiff, the Court must adopt a rebuttable presumption that the "most adequate plaintiff in any private action"

2

arising under the PSLRA is the person or group of persons that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."[2] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). This presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). In addition, the most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts "should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *11 (N.D. Ill. Oct. 8, 2019) (citation omitted).

### C. Parties Seeking Appointment as Lead Plaintiff

Four members of the purported plaintiff class moved to be appointed as lead plaintiff: Sam Uemura (Dkt. 13); Jeffrey Coleman (Dkt. 17); James Mathew (Dkt. 19); and Martin Gui (Dkt. 22). Coleman and Uemura withdrew their motions (Dkt. 35; Dkt. 36), leaving Mathew and Gui as the only movants for appointment as lead

---

[2] Rule 23(a) of the Federal Rule of Civil Procedure provides that a party may serve as a class representative if he satisfies four requirements:
  (1) the class is so numerous that joinder of all members is impracticable;
  (2) there are questions of law or fact common to the class;
  (3) the claims or defenses of the representative part[y] are typical of the claims or defenses of the class; and
  (4) the representative part[y] will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

3

plaintiff. Gui argues that he is the most adequate plaintiff because he has the largest financial interest among plaintiffs, based on his losses of approximately $295,183.64. (Dkt. 22 at 1.) By comparison, Mathew has facially smaller losses of $226,953.90. (Dkt. 19 at 1.) Mathew contends that, although Gui may present facially larger losses, one must calculate approximate losses in accordance with the holdings of *Dura Pharms., Inc v. Broudo*, 544 U.S. 336 (2005), and *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014). When calculated under *Dura* and *Wong*, Gui's losses are less than Mathew's. (Dkt. 37 at 1–2.) Mathew thus argues that he, not Gui, has the largest financial interest. (*Id.* at 2–4.) For the following reasons, the Court agrees that *Dura* and *Wong* dictate the proper loss calculation. Accordingly, Mathew has the largest financial interest in this litigation.

## II. DISCUSSION

### A. Most Adequate Plaintiff

Mathew and Gui both satisfy the first requirement for appointment as lead plaintiff under the PSLRA because Mathew and Gui both moved (Dkt. 19; Dkt. 22) to be appointed as lead plaintiff in response to notice. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). As for the third requirement for appointment as lead plaintiff under the PSLRA, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At this early stage of litigation, "the relevant Rule 23 criteria are typicality and adequacy." *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *2 (N.D. Ill. Nov. 15, 2019). A lead plaintiff "meets the typicality requirement if its claims or defenses . . . are typical of the claims or defenses of the class." *In re Groupon, Inc. Sec. Litig.*, 2012 WL

4

3779311, at *3 (N.D. Ill. Aug. 28, 2012). Mathew's claims are typical of the class's claims because Mathew "purchased Exicure securities during the Class Period; at prices inflated by Defendants' materially false and misleading statements and/or omissions; and was damaged as a result." (Dkt. 21 at 7.) Similarly, Gui's claims are typical of the class's claims because Gui "purchased Exicure securities at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby." (Dkt. 23 at 8.) A lead plaintiff meets the adequacy requirement if

> (1) its claims are not antagonistic or in conflict with those of the class;
> (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and
> (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously.

*In re Groupon, Inc.*, 2012 WL 3779311, at *3 (quoting *City of Sterling Heights Gen. Emp. Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *9 (N.D. Ill. Apr. 18, 2012)). Both Mathew and Gui satisfy the adequacy requirement because they lack any antagonistic claims, have a substantial financial interest in the litigation, and have selected a qualified law firm as lead counsel candidate. (Dkt. 21 at 8; Dkt. 23 at 8–9.) Accordingly, what remains is whether Mathew or Gui satisfies the second requirement for appointment as lead plaintiff under the PSLRA, namely, which movant has the largest financial interest in this case. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

The PSLRA "does not specify how courts should measure the largest financial interest in the relief sought by the class." *Chandler v. Ulta Beauty, Inc.*, 2018 WL

5

3141763, at *2 (N.D. Ill. June 26, 2018) (citation omitted). In determining the largest financial interest, most courts consider the following factors:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *2 (N.D. Ill. July 19, 2019) (citing *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Courts in this District frequently consider the approximate losses suffered to be the most important of the four factors. *See, e.g., City of Sterling Heights*, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012) ("While courts differ on the precise weight to apply to each factor, most courts agree that fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff."); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses").

Gui's claimed approximate losses of $295,183.64 exceed Mathew's claimed approximate losses of $226,953.90. (Dkt. 22 at 1; Dkt. 19 at 1.) But Mathew and Gui disagree about *how* to properly calculate approximate losses for this type of securities fraud litigation. Their disagreement originates in whether the Court should follow the principle espoused in *Dura* and *Wong*. In *Dura*, the Supreme Court reiterated that, in cases "involving publicly traded securities and purchases or sales in public securities markets," plaintiffs need to prove "loss causation," meaning a "causal

6

connection between the material misrepresentation and the loss." 544 U.S. at 341–42. *Dura* explained that if, a stock purchaser "sells the shares quickly *before* the relevant truth begins to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342 (emphasis added). In *Wong*, the Seventh Circuit echoed *Dura* and explained that class members who sold their stock before the first corrective price decline "cannot be said to have suffered economic loss caused by [the defendant's] alleged fraud." 773 F.3d at 864–85.

Mathew argues that *Dura* and *Wong* should govern here. Under those cases, Gui's approximate losses fall from $295,183.64 to $185,752 under LIFO and $110,265 under FIFO[3] because Gui sold some of his Exicure stock position before Exicure's first corrective disclosure (Dkt. 37 at 2.) In contrast, Mathew—who has not sold any of his Exicure stock position—suffered the highest approximate losses of $226,953.90. (Dkt. 37 at 4–8; Dkt. 41 at 2–8.)

Gui argues that Dura should not be applied at this early stage; rather, the Court should instead "determine the movant with the greatest loss based on a comparison of total losses, and not on a comparison of losses that might later be limited by *Dura*." (Dkt. 38 at 6.) Gui contends that, if the Court hewed only to the four *Lax* factors to determine the most adequate plaintiff, Gui's "losses (if using straight LIFO), net funds expended, and total shares purchased are all greater than Mathew's." (Dkt. 42 at 5.) Gui also argues that courts in this District have disagreed

---

[3] "LIFO" is an accounting method meaning "Last-In, First Out." LIFO assumes that the last unit to arrive in inventory—in this case, the last Exicure stock unit purchased—will be sold first. This method contrasts with "FIFO," which is "First-In, First Out." FIFO assumes that the first unit to arrive in inventory will be sold first.

7

whether to follow *Dura* at this early stage of litigation when courts typically select lead plaintiffs. (Dkt. 38 at 5–6 (citing *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013); *Mortimer*, 2019 WL 3252221, at *2–3).)

With due respect to Gui's well-presented position, the sounder approach is to calculate approximate losses under the *Dura* and *Wong* framework. Those cases stand for the principle that if stockholders sell their shares before the company issues a corrective disclosure, then the company's alleged misrepresentation was not the *cause* of the loss in value to the company's stock price. *See Dura*, 544 U.S. at 342; *Wong*, 773 F.3d at 864–85. It is axiomatic that, if stockholders sell shares for less than they paid, they incur a loss. But that loss cannot be causally attributed to any alleged misrepresentations unless the company first institutes a corrective measure.

Gui's insistence that *Dura* should not apply now because there is "disagreement on whether the *Dura* method should be applied at this stage" is, for several reasons, unpersuasive. (Dkt. 38 at 5.) First, *Construction Workers Pension Trust Fund*, on which Gui relies, was decided pre-*Wong* and thus carries less persuasive value in weighing the four *Lax* factors. Second, *Mortimer* (another case cited by Gui) did not resolve whether to apply *Dura*'s loss causation standard. *See Mortimer*, 2019 WL 3252221, at *3 ("Ultimately, the Court need not determine whether it is appropriate to apply *Dura*'s loss causation standard . . ."). Third, Gui cites several cases suggesting disagreement between district courts, but the vast majority are from courts outside this Circuit that were not bound to consider the Seventh Circuit's decision in *Wong*. (Dkt. 42 at 3.) Post-*Wong*, however, courts in this

8

District have trended towards reading *Wong* as requiring the exclusion of losses incurred before corrective disclosures. *See, e.g.*, *Hedick*, 2019 WL 4958238, at *6 ("The Court agrees that these claimed losses [before the alleged fraud was revealed] properly are excluded"); *Chandler*, 2018 WL 3141763, at *4 (a plaintiff "cannot satisfy the causation element of a securities fraud claim based on an inflated price theory relating to securities sold before the fraud was revealed"). For these reasons, applying *Dura* and *Wong* to Mathew's and Gui's approximate losses is proper.

Under *Dura* and *Wong*, the Court calculates Mathew's and Gui's approximate losses within the class period, excluding any losses occurring before November 15, 2021: the date of Exicure's first public disclosure. Mathew purchased shares of Exicure stock six times from January 14, 2021 to June 23, 2021. (Dkt. 21-6, Ex. E.) Mathew retained all 132,103 shares of Exicure stock during the class period; he did not sell any shares. (*Id.*) Mathew's total stock purchases during the class period ($253,547.16) minus the average value of the retained shares after the class period ($26,593.26) equals a total loss of $226,953.90. In contrast, Gui engaged in eleven transactions of Exicure stock from August 2, 2021 to October 15, 2021, seven of which were sales of stock. (Dkt. 23-2, Ex. A.) All of Gui's sales occurred *before* Exicure's November 15, 2021 SEC disclosure, so any losses from those sales are excluded under *Dura* for purposes of appointing lead plaintiff. Consequently, Gui's eligible losses total $185,752 under LIFO—$41,202 fewer than Mathew's approximate losses.[4]

---

[4] Courts in this District "have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment of a lead plaintiff in a securities fraud case." *City of Sterling Heights*, 2012 WL 1339678, at *5. But even when preferring LIFO over FIFO, Gui's losses are still below Mathew's by over $40,000.

9

Gui argues against applying *Dura* in this case because there have been multiple corrective disclosures. (Dkt. 38 at 6.) It is true that Colwell's complaint identified three publicly facing disclosures issued over November and December 2021. (Dkt. 8 ¶¶ 27–34.) But this argument against applying *Dura* is unpersuasive, for two reasons. First, *Roth v. Aon Corp.*, 238 F.R.D. 603 (N.D. Ill. 2006), is distinguishable. *Roth* is pre-*Wong* and also adjudicates at the class certification stage, not the lead plaintiff appointment stage. Second—and more importantly—all of Gui's sales occurred on or before October 15, 2021, one month before Exicure's *first* disclosure on November 15, 2021. (Dkt. 23-2, Ex. A.) Exicure's subsequent disclosures thus have no bearing on Gui's loss position.

Accordingly, Mathew has the largest approximate losses among movants. *See Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (noting that "most courts simply determine which potential lead plaintiff has suffered the greatest total losses"). The Court acknowledges that Gui has a significant financial interest in this litigation. (Dkt. 42 at 7 (arguing that Gui's "net funds expended" were "75% higher" than Mathew's, and Gui's "total shares purchased" were "almost 80% greater than Mathew's.").) Gui has the larger financial interest under these two of the four *Lax* factors. *See Mortimer*, 2019 WL 3252221, at *2 (citing *Lax*, 1997 WL 461036, at *5). But the Court considers all four *Lax* factors in view of *Dura* and *Wong*, coupled with the trend in this District to prioritize approximate losses as the most important—and often dispositive—factor. *Takara Trust*, 229 F.R.D. at 579; *City of Sterling Heights*, 2012 WL 1339678, at *3.

The Court thus finds that Mathew has the largest financial interest in this

10

case. Having satisfied all three requirements under the PSLRA, Mathew is the presumptive most adequate plaintiff.

### B. Rebuttable Presumption

In addition, Gui cannot overcome the rebuttable presumption under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) that Mathew is the most adequate plaintiff. First, Gui has not shown that Mathew "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Second, Gui has not shown that Mathew "is subject to unique defenses" that render him "incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

Because Gui has not rebutted the presumption that Mathew is the most adequate plaintiff, Mathew is appointed as lead plaintiff in this case.

### C. Appointment of Lead Counsel

Mathew seeks for Bleichmar Fonti & Auld LLP ("BFA") to be appointed as lead counsel. Courts "should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class." *Hedick*, 2019 WL 4958238, at *11. Mathew represents that BFA has had extensive experience and success litigating securities class actions. (Dkt. 21 at 9; Dkt. 21-7, Ex. F.) BFA has achieved several resolutions to securities class actions with recoveries into the hundreds of millions of dollars. (*Id.*) There is no apparent and compelling reason to disturb Mathew's choice of class counsel. Accordingly, BFA is appointed as lead counsel.

## III. CONCLUSION

Mathew is appointed lead plaintiff, and Bleichmar Fonti & Auld LLP is appointed lead counsel.

SO ORDERED in No. 21-cv-06637.

Date: March 20, 2023

JOHN F. KNESS
United States District Judge