UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK COLWELL, Individually and on
Behalf of All Others Similarly Situated,

       Plaintiff,

       v.

EXICURE, INC., DAVID A. GILJOHANN,
BRIAN C. BOCK, and GRANT T. CORBETT,

       Defendants.

Case No. 1:21-CV-06637

Honorable John F. Kness

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
<u>CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  RELEVANT BACKGROUND ..................................................................................... 2

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 4

    A.  The Standard for Preliminary Approval ...................................................... 4

    B.  The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i)................................................................... 4

        1.  Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(a)(2)(A)................................................................ 5

        2.  The Proposed Settlement Was Negotiated at Arm's Length – Rule 23(a)(2)(B)........................................................................ 6

        3.  The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C)........................................................................ 6

        4.  The Plan of Allocation Treats Class Members Equitably – Rule 23(e)(2)(D) ...................................................................... 10

    C.  The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii)....................................................... 11

        1.  Numerosity – Rule 23(a)(1)........................................................ 11

        2.  Commonality – Rule 23(a)(2)..................................................... 12

        3.  Typicality – Rule 23(a)(3) .......................................................... 12

        4.  Adequacy – Rule 23(a)(4).......................................................... 12

        5.  Predominance and Superiority – Rule 23(b)(3) ....................................... 13

IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS................ 13

V.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................... 15

CONCLUSION............................................................................................................. 16

i

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 13

*Beezley v. Fenix Parts, Inc.*,
  2019 WL 6463154 (N.D. Ill. Nov. 26, 2019) ..................................................... 8, 14

*In re Gohealth, Inc. Sec. Litig.*,
  2024 WL 3647088 (N.D. Ill. May 22, 2024) ......................................................... 10

*In re HealthSouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ........................................................................ 10

*In re Nanophase Techs. Corp. Litig.*,
  1999 WL 965468 (N.D. Ill. Sept. 30, 1999) ........................................................... 5

*In re Neopharm, Inc. Sec. Litig.*,
  225 F.R.D. 563 (N.D. Ill. 2004) ............................................................................ 12

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................................... 4

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ............................................................................ 12

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ................................................................................. 13

*T.K. Through Leshore v. Bytedance Tech. Co.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ............................................................ 5

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ................................................................................. 10

*Wong v. Accretive Health, Inc.*,
  2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ........................................................ 10

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ............................................................................... 5, 6

**STATUTES**

15 U.S.C. § 78u-4 ........................................................................................... 10, 14

28 U.S.C. § 1715 .................................................................................................................. 2, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

## I.      INTRODUCTION

The parties have agreed to a proposed Settlement that would resolve this securities class action in exchange for a cash payment of $5,625,000—an outstanding result given Exicure's financial constraints, the maximum theoretical damages, and the risks and delay of continued litigation.[1]  Lead Plaintiff James Mathew seeks the Court's preliminary approval of the proposed Settlement so that notice can be disseminated and the Final Approval Hearing can be scheduled.

Under Rule 23(e)(1)(B), preliminary approval should be granted because the Court "will likely be able" to (i) grant final approval under Rule 23(e)(2), and (ii) certify the Settlement Class.

First, the Court "will likely be able" to grant final approval because the proposed Settlement is procedurally fair and provides adequate relief, satisfying Rule 23(e)(2).  The parties reached the proposed Settlement after arm's-length mediation under the auspices of Jed Melnick of JAMS.  After a full-day mediation session and months of further negotiations, the parties ultimately accepted Mr. Melnick's recommendation to settle the action for $5.625 million.

The $5.625 million Settlement is fair, reasonable, and adequate.  Indeed, the $5.625 million recovery is over 22% of maximum damages—an exceptional result that is more than four times higher than the average percentage recovery in Section 10(b) settlements.

The real risk of recovering less—or nothing at all—confirms the Settlement's reasonableness.  Had litigation continued, Defendants would have contested liability at every stage, including by moving to dismiss and arguing that the Second Amended Complaint fails to state any viable claim.  In addition, Exicure's distressed financial condition—with less than $600,000 cash on hand—heightened the risk that Exicure could not fund a meaningfully larger

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement (the "Stipulation"), filed herewith.  Emphasis is added, and citations omitted, unless otherwise noted.

resolution, much less satisfy any judgment Lead Plaintiff might eventually obtain. Lead Plaintiff and Plaintiff's Counsel (Lead Counsel Bleichmar Fonti & Auld LLP ("BFA"), local counsel Fegan Scott LLC ("FS"), and additional counsel The Schall Law Firm ("Schall")) successfully navigated these risks to achieve the proposed Settlement, which provides the Settlement Class with a prompt, certain, and substantial recovery.

Second, the Court will be able to certify the proposed Settlement Class. With millions of shares of Exicure common stock outstanding during the Class Period, Rule 23(a)(1)'s numerosity requirement is met, and this action presents common class-wide questions, including falsity, materiality, scienter, and damages, satisfying Rule 23(a)(2). Typicality and adequacy under Rules 23(a)(3) and (4) are present because (i) Lead Plaintiff's interests are aligned with all members of the Settlement Class, who similarly purchased Exicure common stock and suffered losses, and (ii) Plaintiff's Counsel are highly experienced in securities litigation and have vigorously litigated this action to achieve the best possible recovery, particularly given Exicure's dire financial condition. The proposed notice program will ensure that Settlement Class Members are promptly apprised of the proposed Settlement so they can participate, exclude themselves, or object before the Final Approval Hearing. Defendants will also provide timely notice of the proposed Settlement, as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.* ("CAFA"), within ten (10) calendar days of this filing.

Lead Plaintiff thus respectfully requests that the Court grant this unopposed motion and enter the proposed Notice Order.

## II. RELEVANT BACKGROUND

**Summary of Litigation:** The initial complaint was filed on December 13, 2021. (ECF No. 1.) On March 23, 2023, the Court appointed James Mathew as Lead Plaintiff and BFA as Lead Counsel. (ECF No. 55.) Following an extensive investigation, Lead Plaintiff filed a Second

2

Amended Complaint on May 26, 2023 (ECF No. 61). The Second Amended Complaint alleges misstatements concerning Exicure's XCUR-FXN drug data and disclosure controls, and asserts claims under Sections 10(b) and 20(a) of the Exchange Act.

**Settlement Negotiations:** Lead Plaintiff and Defendants Exicure, Giljohann, and Bock engaged in a confidential mediation before Jed Melnick of JAMS. A full-day mediation session occurred on March 4, 2024. Before the session, the parties exchanged mediation statements addressing the strength of the allegations and information about the Company's financial condition. During the March 4 session, the parties exchanged multiple demands and counteroffers, but were unable to reach a resolution.

Over the ensuing months, the parties continued negotiations under Mr. Melnick's auspices, but were unable to reach an agreement. On July 24, 2024, Mr. Melnick made a mediator's proposal that the case settle for $5,625,000. On July 26, 2024, Plaintiff and Defendants Exicure, Giljohann, and Bock accepted the proposal, and all parties subsequently executed the Stipulation.

**The Proposed Settlement:** As set forth in the Stipulation and supporting documents, following preliminary approval of the settlement, $5,625,000 in cash (the "Settlement Amount") will be paid into interest-bearing escrow accounts. (*See* Stipulation ¶¶1.41, 2.1.) The Net Settlement Fund (*i.e.*, the Settlement Amount, plus accrued interest, minus Notice and Administration Costs, Taxes and Tax Expenses, and any Court-approved attorneys' fees, expenses, awards or other Court-approved deductions) will then be distributed to Settlement Class Members who submit valid Proof of Claim forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Standard for Preliminary Approval

Rule 23(e) provides that the Court should approve a class action settlement if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

Judicial approval of a class action settlement is a two-step process. First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is provided and a hearing is held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e)(1)(B), a court grants preliminary approval upon a finding that it "will likely be able" to (i) grant final approval of the settlement under Rule 23(e)(2), and (ii) certify the settlement class. As discussed below, the proposed Settlement satisfies both requirements.

### B. The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i)

In determining settlement approval, Rule 23(e)(2), as amended in 2018, requires the Court to consider whether the settlement "is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Prior to the Rule 23 amendment, the Seventh Circuit provided similar factors for consideration:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[2] At the preliminary approval stage, the Court need only find that the settlement is the result of arm's-length negotiations, "fall[s] within a range of reasonableness," and has "no obvious deficiencies." *Mortimer v. Diplomat Pharmacy, Inc.*, No. 1:19-cv-01735, ECF 135 ¶2 (N.D. Ill. Jan. 27, 2022) (Kness, J.).

### 1.   Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(a)(2)(A)

Rule 23(a)(2)(A)'s adequacy of representation requirement is satisfied if the class representative does "not have interests in conflict with those of the class and . . . vigorously pursue[d] the litigation on the behalf of the class." *In re Nanophase Techs. Corp. Litig.*, 1999 WL 965468, at *3 (N.D. Ill. Sept. 30, 1999).

Lead Plaintiff's interest in obtaining the largest possible recovery is fully aligned with the rest of the Settlement Class. Lead Plaintiff suffered over $226,000 in losses on Exicure common stock during the Class Period (*see* ECF No. 21-6), and through counsel, he has vigorously pursued the Settlement Class's claims to achieve the proposed Settlement. Lead Plaintiff has protected the Class's interests by retaining and overseeing qualified and experienced counsel. Lead Counsel BFA is highly experienced in litigating securities class actions (*see* ECF 55 at 11), and Schall and local counsel FS are also highly experienced in securities and other complex litigation.

---

[2] Amended Rule 23(e)(2) encompasses the Seventh Circuit factors. *See, e.g.*, *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 (N.D. Ill. Mar. 25, 2022) (noting that the Rule 23(e)(2) factors "capture[]" and "incorporate" the Seventh Circuit factors).

**2. The Proposed Settlement Was Negotiated at Arm's Length – Rule 23(a)(2)(B)**

Satisfying Rule 23(a)(2)(B), the settlement "was negotiated at arm's length" before a respected mediator, Mr. Melnick. Further confirming the Settlement's procedural fairness, despite nearly five months of negotiations, the parties were unable to reach agreement on the settlement amount, resulting in Mr. Melnick's issuance of a mediator's recommendation to settle the action for $5.625 million. That the "settlement was proposed by an experienced third-party mediator after an arm's length negotiation" supports preliminary approval. *Wong*, 773 F.3d at 864.

**3. The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C)**

Rule 23 (e)(2)(C) provides that the adequacy of relief should be assessed "taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." These factors are satisfied here.

**a. The Costs, Risks, and Delay of Trial and Appeal**

In the Seventh Circuit, "[t]he most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864.

Here, the proposed Settlement provides for a cash recovery of $5.625 million—an outstanding result given the risks and delay of continued litigation, the maximum theoretical damages, and Defendants' financial constraints and limited ability to withstand a larger judgment. Indeed, the $5.625 million Settlement represents a recovery of over 22% of maximum estimated

damages (approximately $25 million). This exceptional recovery is more than four times higher than the 4.5–4.8% average recovery in Section 10(b) cases between 2014-2023.[3]

**Merits Risks:** Although Lead Plaintiff and Plaintiff's Counsel believe the claims asserted are meritorious, Lead Plaintiff and the Class faced numerous risks in proving Defendants' liability. For example, had litigation continued, Defendants would have vigorously disputed the element of scienter. In particular, Defendants Exicure, Giljohann and Bock would have argued that they acted in good faith and without knowledge of the alleged falsity of the XCUR-FXN data or the alleged deficiencies in Exicure's disclosure controls, and that Defendant Corbett's alleged scienter cannot be imputed to them. These arguments posed substantial risks.

**Risk of Financial Condition:** Even if Lead Plaintiff prevailed on the merits, Exicure's distressed financial position significantly reduces the prospect of any recovery materially larger than the proposed Settlement. Exicure reported that as of June 30, 2024, it had liabilities exceeding $9 million and a cash balance of just $528,000.[4] Further, Exicure has recently warned investors that "there is substantial doubt about the Company's ability to continue as a going concern," and that Exicure "may need to seek bankruptcy protection in the near term." (*Id.*) Exicure's limited cash position presented serious risks that the Company would not even survive further litigation, and that the Class could not recover more than the $5.625 million proposed Settlement.

**Risk of Delay:** Finally, the inherent delay in obtaining and collecting any judgment is also relevant. Had litigation continued, Lead Plaintiff would have had to overcome a motion to dismiss,

---

[3] *See* Cornerstone Research, *Securities Class Action Settlements – 2023 Review and Analysis*, available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

[4] *See* Exicure Form 10-Q, dated August 13, 2024, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/000169853024000089/xcur-20240630.htm.

7

obtain class certification, complete discovery, prevail at summary judgment and trial, and defeat the ensuing appeals. These delays could deprive the Class of any recovery for years, magnifying the risk that Exicure's financial condition could further worsen over the intervening period.

### b. The Proposed Method for Distributing Relief Is Effective

As demonstrated below and in the supporting Declaration of Morgan Kimball, the proposed method to distribute relief to the Settlement Class is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

The notice process includes direct mail notice to all those who can be identified with reasonable effort, including through nominees. The Notice (Ex. A-1 to the Stipulation) is a postcard that contains all the information required under the PSLRA and satisfies Rule 23 (*see infra* at IV). Because recent experience in securities settlements indicates that the majority of claims are filed electronically, the postcard does not include a paper Proof of Claim form (Ex. A-3 to the Stipulation), but directs Settlement Class Members (in bold on the first page and through a QR code that can be scanned with a mobile phone) to a case-specific website where they can submit claims electronically or download a copy of the Proof of Claim.[5] (Kimball Decl. ¶6.) The postcard also provides a toll-free phone number to contact the Claims Administrator, Epiq Class & Claims Solutions, Inc. ("Epiq"), and request a paper copy of the Proof of Claim. (*Id.*) The website also provides a Long-Form Notice (Ex. A-2 to the Stipulation) with additional detailed information, including in question-and-answer format, as well as copies of the Stipulation and other relevant documents. (*Id.* ¶16.) Finally, in addition to direct mailing and the website, the

---

[5] Providing the long-form notice and claim form online (with direct mail notice provided by postcard) has been approved under the PSLRA and Rule 23 in other securities class settlements in this District. *See, e.g., Beezley v. Fenix Parts, Inc.*, 2019 WL 6463154, at *3 (N.D. Ill. Nov. 26, 2019) (approving notice through "mailing of the Postcard Notice," with the "Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded").

notice program will include publication of the Summary Notice (Ex. A-4 to the Stipulation) in *Investor's Business Daily* and *PR Newswire*. (*Id.* ¶14.)

The current estimate calls for direct mailing of the Notice to about 30,000 potential Settlement Class Members. Accordingly, this combination of direct mailing of the Notice and electronic dissemination of the Long-Form Notice and Proof of Claim (with paper copies available through the website or by phone) significantly reduces printing and postage costs and waste, thereby preserving more assets for distribution to Settlement Class Members. (*Id.* ¶13.)

The claims administration process will follow established procedures in securities class actions. Settlement Class Members must complete the Proof of Claim and provide the transaction information and documentation necessary to calculate their Recognized Claims pursuant to the Plan of Allocation (set forth in the Long-Form Notice). Once the Claims Administrator has processed all claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to Authorized Claimants. If any funds remain in the Net Settlement Fund after the initial distributions, the Claims Administrator will conduct re-distributions until it is no longer cost-effective to do so. Any remaining balance will be contributed to a non-profit, charitable organization after Court approval.

### c. The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable

The proposed Settlement does not contemplate any specific fee and expense award, but rather recognizes that Lead Counsel will seek Court approval of a separate fee and expense application to be paid from the Settlement Fund. Lead Counsel's fee and expense application will be fully briefed via formal motion in accordance with the Notice Order.

As stated in the Notice, Lead Counsel will seek fees of no more than 30% of the Settlement Fund. This amount is consistent with percentage fees that courts in this District have regularly

approved in securities class actions. *See, e.g.*, *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (affirming award of 30%); *In re Gohealth, Inc. Sec. Litig.*, 2024 WL 3647088, at *1 (N.D. Ill. May 22, 2024) (awarding 30%); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (same). Lead Counsel will also seek litigation expenses in an amount not to exceed $110,000, and an award to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) of no more than $6,000.

### d. Lead Plaintiff Has Identified All Agreements Made in Connection with the Proposed Settlement

In addition to the Stipulation, the parties have entered into a confidential Opt-Out Agreement providing specified options to terminate the settlement if Persons who otherwise would be Members of the Settlement Class, and timely choose to exclude themselves, purchased more than a certain number of shares of Exicure common stock. (Stipulation ¶8.4.) As is standard in securities class action settlements, such agreements are not made public to avoid incentivizing individual class members to leverage the opt-out threshold to seek disproportionate individual settlements at the expense of the broader class.[6] Pursuant to its terms, the Opt-Out Agreement may be submitted to the Court for *in camera* review. Finally, Lead Plaintiff agreed to dismiss Defendant Corbett (who has limited assets) in connection with a class settlement, or before motions to dismiss are due, in exchange for his cooperation to provide relevant facts.

### 4. The Plan of Allocation Treats Class Members Equitably – Rule 23(e)(2)(D)

The proposed Plan of Allocation, set forth in the Long-Form Notice, "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Specifically, the Plan of Allocation,

---

[6] *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

which was prepared with expert assistance, satisfies this requirement by allocating each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Exicure common stock. Those recognized losses are calculated under the Plan of Allocation using estimates of artificial inflation at the time of purchase and sale.

The Plan of Allocation is comparable to plans approved in other securities class actions. *See, e.g.*, *Diplomat*, No. 1:19-cv-01735, ECF 151 (N.D. Ill. June 7, 2022) (Kness, J.) (approving plan of allocation that calculated recognized losses based on trade dates, prices, and artificial inflation or deflation at time of trade); *id.* ECF 135-1 at 8-14 (Diplomat Plan of Allocation).

**C. The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii)**

The proposed Settlement Class consists of "all Persons who purchased or otherwise acquired Exicure common stock during the Class Period of January 7, 2021 through December 10, 2021, both inclusive." (Stipulation ¶ 1.42.)[7] The Court will be able to certify the proposed Settlement Class because it meets each requirement for certification under Rules 23(a) and (b)(3).

**1. Numerosity – Rule 23(a)(1)**

The Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Exicure common stock trades on NASDAQ, and the Company had more than 80 million shares outstanding during the Class Period.[8] Thus, "[i]t can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class," satisfying

---

[7] Excluded from the Settlement Class are: Defendants, the current and Class Period officers and directors of Exicure, and with respect to each of the foregoing, the members of their immediate families, legal representatives, affiliates, heirs, successors-in-interest, assigns, and any entity in which such excluded persons have or had a majority interest. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court. (Stipulation ¶ 1.42.)

[8] *See* Exicure Form 10-K, dated March 11, 2021, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/00016985302100031/xcur-20201231.htm (87,960,327 shares outstanding).

numerosity. *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (numerosity where company had more than 16 million shares outstanding).

### 2. Commonality – Rule 23(a)(2)

Rule 23(a)(2) is satisfied because this action presents "questions of law or fact common to" the Settlement Class. Common questions include: whether Defendants made false or misleading statements of material fact; whether Defendants acted with scienter; whether the price of Exicure common stock was artificially inflated or maintained; and whether class members suffered damages. In securities actions, courts routinely find that these common questions satisfy Rule 23(a)(2). *See Neopharm*, 225 F.R.D. at 566.

### 3. Typicality – Rule 23(a)(3)

Rule 23(a)(3) is satisfied because Lead Plaintiff's claims "are typical of the claims" of the Settlement Class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Neopharm*, 225 F.R.D. at 566. Here, like all Settlement Class Members, Lead Plaintiff purchased or acquired Exicure common stock "during the class period when defendants were alleged to have been misleading the market," and advances the same claims under the Exchange Act. *Id.* (finding class representative typical).

### 4. Adequacy – Rule 23(a)(4)

A plaintiff meets Rule 23(a)(4)'s "adequacy" requirement if he "will fairly and adequately protect the interests of the class." To demonstrate adequacy, a plaintiff "must show that: (1) their claims are not antagonistic to or in conflict with those of the proposed class; (2) they have sufficient interest in the outcome of the case; and (3) experienced, competent counsel represents them." *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009). Lead Plaintiff and Lead Counsel meet this standard for the reasons set forth in Section III.B.1.

12

### 5. Predominance and Superiority – Rule 23(b)(3)

As is typical in securities class actions, "questions of law and fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Indeed, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). That is because "[f]alsehood and materiality affect investors alike," and therefore these common questions predominate over any individual questions. *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) (affirming certification under Rule 23(b)(3)). This case is no different.

Superiority is also satisfied. The Settlement Class consists of many geographically dispersed investors who may have small individual damages; Lead Plaintiff is not aware of any related actions seeking recovery for Class members; and concentrating the litigation in this Court has numerous benefits, including eliminating the risk of inconsistent adjudications.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Finally, the form and content of the Notice should be approved because they satisfy due process, the Federal Rules of Civil Procedure, and the PSLRA. Rule 23(e)(1) requires "notice in a reasonable manner to all class members who would be bound" by a proposed settlement, and Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the Notice and Long-Form Notice (Exs. A-1 and A-2 to the Stipulation) are written in plain language and apprise Settlement Class Members of the nature of the litigation, including the claims and issues involved; the definition of the Settlement Class; the terms of the proposed Settlement; that the Court will exclude any Settlement Class Member who requests exclusion; the

13

procedures and deadlines for exclusion requests and objections; and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B), among other disclosures.

The Notice and Long-Form Notice also satisfy the PSLRA's disclosure requirements for securities class settlements. *See* 15 U.S.C. § 78u-4(a)(7). Specifically, they disclose:

1. the amount of the settlement on an aggregate and per-security basis (Notice at 1-2; Long-Form Notice at 1), satisfying 15 U.S.C. § 78u-4(a)(7)(A);

2. the issues about which the parties disagree (Notice at 2; Long-Form Notice at 3), satisfying 15 U.S.C. § 78u-4(a)(7)(B)(ii);

3. the maximum amount of attorneys' fees and litigation expenses that Lead Counsel will seek (including on a per-share basis) (Notice at 2; Long-Form Notice at 3-4), satisfying 15 U.S.C. § 78u-4(a)(7)(C);

4. the name, mailing address, and telephone number of the Claims Administrator and/or Lead Counsel, who will be available to answer questions from Settlement Class Members (Notice at 1-2; Long-Form Notice at 4), satisfying 15 U.S.C. § 78u-4(a)(7)(D); and

5. a brief statement explaining the reasons why the parties are proposing the settlement (Notice at 2; Long-Form Notice at 8), satisfying 15 U.S.C. § 78u-4 (a)(7)(E).

The Notice plan should also be approved. If preliminary approval is granted, Epiq will disseminate the Notice to all identified potential Settlement Class Members. To do so, it will utilize a list from Defendants' securities transfer agent of all persons who purchased or otherwise acquired Exicure common stock during the Class Period, as well as all persons on Epiq's proprietary list of banks, brokerage firms, and nominees. In addition, Epiq will publish the Summary Notice in *Investor's Business Daily* and on *PR Newswire*. Epiq will also post the Notice, Long-Form Notice, Proof of Claim, and other materials on the Settlement Website.

The proposed combination of mail, publication, and electronic notice satisfies Rule 23(c)(2)(B). Courts in this District have approved class notice plans, like that proposed here, that use direct mail, press releases, and posting of notice information on a dedicated website. *See, e.g.*, *Beezley*, 2019 WL 6463154, at *2-3.

14

Finally, Defendants will serve notice of the proposed Settlement pursuant to CAFA within ten calendar days of this filing, satisfying CAFA's requirement to do so. *See* 28 U.S.C. § 1715(b). To ensure compliance with CAFA, the proposed Notice Order also requests that the Court hold the Final Approval Hearing not earlier than ninety (90) days after the appropriate federal official and state officials are served (*i.e.*, on or after December 16, 2024). *See* 28 U.S.C. § 1715(d).

## V.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Lead Plaintiff respectfully proposes the schedule below for settlement-related events. The timing of each event is determined by the date the Notice Order is entered and the date of the Final Approval Hearing.

| EVENT | DEADLINE |
|---|---|
| Deadline for Epiq to publish the Summary Notice in a national news publication and over a national newswire service | 14 calendar days from entry of the Notice Order (Proposed Order ¶8(b)) |
| Deadline for Epiq to commence mailing of the Notice to Settlement Class Members (the "Notice Date") and to post copies of the Notice, Long-Form Notice, Proof of Claim, Stipulation, and its exhibits to a website for the action (www.ExicureSecuritiesLitigation.com) | 21 calendar days from entry of the Notice Order (*id.* ¶8(a)) |
| Deadline to submit written requests for exclusion | 45 calendar days from Notice Date (*id.* ¶12) |
| Deadline to submit Proof of Claim | 90 calendar days from Notice Date (*id.* ¶11(a)) |
| Deadline for motions for final approval of the Settlement, Plan of Allocation, and for attorneys' fees and expenses | 35 calendar days prior to the Final Approval Hearing (*id.* ¶15) |
| Deadline for objections and statements of intention to appear at the Final Approval Hearing | 21 calendar days prior to the Final Approval Hearing (*id.* ¶13(a)) |
| Deadline for replies to any Objections | 7 calendar days prior to the Final Approval Hearing (*id.* ¶15) |
| Deadline for Lead Counsel to file with the Court proof of mailing and publication of the Notice, Long-Form Notice, Proof of Claim, Summary Notice, and Stipulation and its exhibits | No later than 7 calendar days prior to the Final Approval Hearing (*id.* ¶8(c)) |
| Final Approval Hearing | No earlier than 90 days from the entry of the Notice Order (or, if later, on or after December 16, 2024) (*id.* ¶4) |

15

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this unopposed motion and enter the agreed-upon proposed Notice Order.

Dated: September 6, 2024

By: */s/ Joseph A. Fonti*

Joseph A. Fonti (*pro hac vice*)
Evan A. Kubota (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, NY 10022
Tel.: (212) 789-1340
jfonti@bfalaw.com
ekubota@bfalaw.com

*Counsel for Lead Plaintiff James Mathew and Lead Counsel for the Class*

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Lead Plaintiff James Mathew*

Brian Schall (*pro hac vice*)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff James Mathew*

16