UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MARK COLWELL, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:21-CV-06637 |
| v. | Honorable John F. Kness |
| EXICURE, INC., DAVID A. GILJOHANN, BRIAN C. BOCK, and GRANT T. CORBETT, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 2

    A.    Legal Standard .................................................................................... 2

    B.    The Proposed Settlement Is Fair, Reasonable, and Adequate ............... 3

        1.    Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(e)(2)(A) ............................................................... 3

        2.    The Proposed Settlement Was Negotiated at Arm's-Length – Rule 23(e)(2)(B) ............................................................................ 3

        3.    The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C) ............................................................................ 4

        4.    The Plan of Allocation Treats Class Members Equitably – Rule 23(e)(2)(D) ............................................................................ 7

        5.    The Settlement Class's Reaction and Lead Counsel's Endorsement Favor Approval ............................................................................. 8

III.    THE PLAN OF ALLOCATION WARRANTS APPROVAL ...................................... 9

IV.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .............. 10

CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ................................................................................. 3

*Goldsmith v. Tech. Sols. Co.*,
No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .................................... 8

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................................... 8

*In re Nanophase Techs. Corp. Litig.*,
1999 WL 965468 (N.D. Ill. Sept. 30, 1999) ............................................................. 3

*In re Sw. Airlines Voucher Litig.*,
No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013),
*aff'd in relevant part*, 799 F.3d 701 (7th Cir. 2015) .................................................... 8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .................................................................................. 3

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................... 9

*Shah v. Zimmer Biomet Holdings, Inc.*,
No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ........... 9

*Slaughter v. Wells Fargo Advisors, LLC*,
No. 13-CV-06368, 2017 WL 3128802 (N.D. Ill. May 4, 2017) .................................. 8

*T.K. Through Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .............................................................. 3

*Wolfe v. TCC Wireless, LLC*,
No. 16 C 11663, 2018 WL 11215318 (N.D. Ill. Mar. 12, 2018) ................................. 8

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ........................................................................ 3, 4, 8, 9

*Young v. Rolling in the Dough, Inc.*,
No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) .............................. 6

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................................ *passim*

## I. INTRODUCTION

The Court has preliminarily approved the $5,625,000 settlement of this securities class action. (ECF No. 103.) The proposed Settlement—which recovers over 22% of maximum damages—promptly secures a valuable recovery for the Settlement Class while avoiding the risks and delay of further litigation.[1]

Final approval is warranted because the proposed Settlement remains fair, reasonable, and adequate when considering the applicable Rule 23 and Seventh Circuit factors. (*See* Section II.) In particular, the Settlement remains an outstanding result, recovering a percentage of damages over four times higher than the average Section 10(b) settlement. At the same time, the risks of further litigation confirm that the Settlement is an appropriate resolution: Since Lead Plaintiff's preliminary approval motion, Exicure's financial condition has continued to deteriorate, with only $343,000 in cash at last reporting. The Settlement is "fair, reasonable, and adequate" under Rule 23(e) and readily warrants final approval.

The Settlement Class's reaction also supports final approval: The Claims Administrator, Epiq, has disseminated the Notice according to the Court-ordered notice plan, with more than 8,100 copies of the Notice distributed to potential Settlement Class Members; the Summary Notice has been published in *Investor's Business Daily* and transmitted over *PR Newswire*, and the Settlement Website has provided digital access to the Notice and other case documents and information. (Ex. E (Kimball Decl.) ¶¶11-21.) To date, Epiq has received no objections to, or requests for exclusion from, the proposed Settlement Class. (*Id.* ¶¶29, 31.)

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement (the "Stipulation") (ECF No. 99) and the Declaration of Evan A. Kubota in Support of (I) Lead Plaintiff's Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reasonable Costs and Expenses, submitted herewith (the "Kubota Declaration"). Citations to "Ex." refer to the exhibits to the Kubota Declaration. Emphasis is added, and citations omitted, unless otherwise noted.

The Plan of Allocation also warrants approval because it is fair, reasonable, and treats Settlement Class members equitably by allocating each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses arising from their transactions in Exicure common stock. (*See* Section III.)

Finally, the Court should certify the Settlement Class. The Court preliminarily found that the Settlement Class satisfied each of the requirements of Rules 23(a) and 23(b)(3). (ECF No. 103 ¶6.) Those requirements remain satisfied. (*See* Section IV.)

Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, and finally certify the Settlement Class.

## II. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal Standard

To grant final settlement approval, Rule 23(e)(2), as amended in 2018, requires the Court to find that the settlement "is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Seventh Circuit specified similar factors for consideration prior to the amendment of Rule 23:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

2

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[2] "Underlying these standards is the general policy favoring voluntary settlements of class action disputes." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985). "Federal courts naturally favor the settlement of class action litigation," and "consider the facts in the light most favorable to the settlement." *Isby v. Bayh*, 75 F.3d 1191, 1196, 1199 (7th Cir. 1996).

Here, each factor is readily satisfied, warranting final approval of the proposed Settlement.

### B. The Proposed Settlement Is Fair, Reasonable, and Adequate

#### 1. Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(e)(2)(A)

Consistent with the Court's preliminary finding (ECF No. 103 ¶6), adequacy is satisfied. Rule 23(e)(2)(A) is satisfied where, as here, the class representative does "not have interests in conflict with those of the class and . . . vigorously pursue[d] the litigation on the behalf of the class." *In re Nanophase Techs. Corp. Litig.*, 1999 WL 965468, at *3 (N.D. Ill. Sept. 30, 1999).

Lead Plaintiff suffered over $226,000 in losses on Exicure common stock during the Class Period (*see* ECF No. 21-6), fully aligning his interest with the rest of the Settlement Class. Lead Plaintiff oversaw Plaintiff's Counsel's vigorous prosecution of this action (Mathew Decl. ¶5) and protected the Class's interests by retaining experienced and qualified Plaintiff's Counsel. (*See* Kubota Decl. ¶¶57-58; Ex. J (Schall Decl.) ¶3; Ex. I (Fegan Decl.) ¶3.)

#### 2. The Proposed Settlement Was Negotiated at Arm's-Length – Rule 23(e)(2)(B)

Consistent with the Court's preliminary finding, the Settlement is "the result of informed, extensive arm's-length, and non-collusive negotiations between experienced counsel, including

---

[2] Amended Rule 23(e)(2) encompasses the Seventh Circuit factors. *See, e.g.*, *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 (N.D. Ill. Mar. 25, 2022) (noting that the Rule 23(e)(2) factors "capture[]" and "incorporate" the Seventh Circuit factors).

mediation under the direction of an experienced mediator, Jed Melnick." (ECF No. 103 ¶2.) The Settlement satisfies Rule 23(e)(2)(B) because it "was negotiated at arm's length" before Mr. Melnick over nearly five months, culminating in Mr. Melnick's mediator's recommendation to settle the case for $5.625 million. (*See generally* Ex. H (Melnick Decl.).) That the "settlement was proposed by an experienced third-party mediator after an arm's length negotiation" supports approval. *Wong*, 773 F.3d at 864.

### 3. The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C)

As required by Rule 23(e)(2)(C), the Settlement provides adequate relief after "taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each factor is satisfied.

### a. The Costs, Risks, and Delay of Trial and Appeal

"[T]he most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864.

Here, the Settlement's cash recovery of $5.625 million—over 22% of maximum estimated damages (approximately $25 million)—is an excellent result. This recovery is more than four times higher than the 4.5% average recovery in Section 10(b) cases between 2014-2023.[3] And it affords Settlement Class Members prompt compensation, avoiding the risks and delays of further

---

[3] *See* Cornerstone Research, *Securities Class Action Settlements – 2023 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

litigation, including the risk that Exicure's deteriorating financial condition would lead to its bankruptcy before trial.

**Merits Risks**: While Lead Plaintiff and Plaintiff's Counsel believe the claims asserted are meritorious, the Settlement Class faced the risk of no recovery at multiple stages, including on a motion to dismiss, at summary judgment, at trial, and on appeal. In particular, the element of scienter would have been heavily disputed if litigation had continued. Defendants Exicure, Giljohann, and Bock likely would have argued that Defendant Corbett's alleged scienter could not be imputed to them, and that they acted in good faith and without knowledge of the alleged falsity of the XCUR-FXN data or the alleged deficiencies in Exicure's disclosure controls. These arguments presented substantial risks of defeating any recovery for the Settlement Class.

**Risk of Exicure's Declining Financial Condition**: Exicure's declining financial condition significantly diminishes the prospect of any recovery meaningfully larger than the $5.625 million Settlement. Indeed, Exicure's cash position continues to decrease. Since the Court entered the Notice Order, Exicure reported that, as of September 30, 2024, the Company had zero revenue in the third quarter, with total liabilities in excess of $9 million and just $343,000 in cash and cash equivalents[4]—meaning the Company's cash position decreased by $185,000 in three months.[5] Exicure also continues to warn investors that "there is substantial doubt about the Company's ability to continue as a going concern," and that Exicure "may need to seek bankruptcy protection in the near term."[6] Exicure's lack of revenue and diminishing cash position presented

---

[4] *See* Exicure Form 10-Q, dated Nov. 14, 2024, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/000169853024000117/xcur-20240930.htm.

[5] *See* Exicure Form 10-Q, dated Aug. 13, 2024, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/000169853024000089/xcur-20240630.htm.

[6] *See* Exicure Form 10-Q, dated Nov. 14, 2024, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/000169853024000117/xcur-20240930.htm.

a significant risk that if the litigation continued, the Company would enter bankruptcy in the immediate near term.

**Risk of Further Delay**: By providing an immediate cash recovery, the proposed Settlement avoids the delay in obtaining and enforcing a judgment. If the litigation had continued, Lead Plaintiff would have had to defeat Defendants' motion to dismiss, secure class certification, conduct significant fact and expert discovery, survive summary judgment, prevail at trial, and defend the favorable trial verdict on appeal. This would take years, depriving Settlement Class Members of the Settlement's prompt cash recovery, while exposing them to the risk of an Exicure bankruptcy or other adverse event. *See Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at \*5 (N.D. Ill. Feb. 27, 2020) (approving settlement and noting that, "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now").

### b.  The Proposed Method for Distributing Relief Is Effective

The proposed Settlement provides an effective method of processing claims and distributing relief, satisfying Rule 23(e)(2)(C)(ii). As the Court preliminarily found, the Notice provided the information required by Rule 23 and the PSLRA, and "constitute[d] the best notice to Settlement Class Members practicable under the circumstances." (ECF No. 103 ¶7.)

The Claims Administrator, Epiq, has satisfied the requirements of the Notice Order and effectively provided notice. (*See* Ex. E (Kimball Decl.).) To date, Epiq has overseen the dissemination of 8,166 copies of the Notice to potential Settlement Class Members. (*Id.* ¶11.) In addition, Epiq created and maintains a case-specific website where Settlement Class Members can obtain the Notice, Long-Form Notice, and additional case documents, and submit their Proof of Claim forms. (*Id.* ¶¶15-21.) Epiq also published the Summary Notice in *Investor's Business Daily* and transmitted the Summary Notice over *PR Newswire*. (*Id.* ¶13.)

The proposed method for distributing relief is also adequate. The claims administration process follows established procedures in securities class actions, whereby Settlement Class Members must complete the Proof of Claim and provide their transaction information. Once the claims process is complete, Epiq will allocate each Authorized Claimant their *pro rata* share of the Net Settlement Fund calculated pursuant to the Plan of Allocation. The Claims Administrator will then distribute payments and, if funds remain thereafter, conduct re-distributions until it is no longer cost-effective to do so. Any remainder will be contributed to a non-profit, charitable organization after approval from the Court.

### c. The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable

Satisfying Rule 23(e)(2)(C)(iii), the terms of the proposed awards of attorneys' fees, litigation expenses, and Lead Plaintiff's reasonable costs and expenses were disclosed in the Notice and are discussed in detail in Lead Counsel's separate motion filed herewith.

### d. Lead Plaintiff Has Identified All Agreements Made in Connection with the Proposed Settlement

As described in Lead Plaintiff's motion for preliminary approval, the proposed Settlement satisfies Rule 23(e)(2)(C)(iv) because Lead Plaintiff identified the confidential Opt-Out Agreement. (ECF No. 98 at 14 of 20.) In addition, as previously described, Lead Plaintiff agreed to dismiss Defendant Corbett (who has limited assets) in exchange for his cooperation to provide relevant facts. (*See id.*)

### 4. The Plan of Allocation Treats Class Members Equitably – Rule 23(e)(2)(D)

The proposed Settlement satisfies Rule 23(e)(2)(D) because it "treats class members equitably relative to each other" through the proposed Plan of Allocation—an objective and fair method of distributing relief, prepared with expert assistance, as discussed in Section III below.

### 5. The Settlement Class's Reaction and Lead Counsel's Endorsement Favor Approval

"[T]he reaction of members of the class to the settlement," including the "amount of opposition to the settlement," as well as the "opinion of competent counsel," are relevant to final approval. *Wong*, 773 F.3d at 863.

Here, the positive reaction of the Settlement Class supports final approval. More than 8,100 notices have been distributed to potential Settlement Class Members. While the deadlines for exclusion requests and objections are December 13, 2024 and December 23, 2024, respectively, to date, no Settlement Class Member has sought exclusion or objected to the proposed Settlement, the Plan of Allocation, or Lead Counsel's requested attorneys' fees and expenses. (Ex. E (Kimball Decl.) ¶¶29, 31.) The Settlement Class's reaction favors final approval of the Settlement. *See Wolfe v. TCC Wireless, LLC*, No. 16 C 11663, 2018 WL 11215318, at *2 (N.D. Ill. Mar. 12, 2018) ("The absence of any objections to the Settlement by Class Members likewise supports approval of the Settlement."); *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-CV-06368, 2017 WL 3128802, at *2 (N.D. Ill. May 4, 2017) ("lack of objections" and opt-outs comprising "less than 1% of the class" "indicates strong support for the Settlement from the Settlement Class"); *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995) ("total lack of objections" and fact that "no one opted out" supported final approval of settlement).

Lead Plaintiff will apprise the Court of any exclusion requests, and respond to any objections, in its reply brief to be filed on January 6, 2025.[7] In addition, a final version of Exhibit 1

---

[7] To the extent any Settlement Class members do object or seek to exclusion, the mere existence of objections and exclusions does not preclude final approval. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013), *aff'd in relevant part*, 799 F.3d 701 (7th Cir. 2015) (approving settlement over 13 objections and where 73 class members sought exclusion); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (approving settlement over 10 objections and with 235 class members seeking exclusion).

to the proposed Final Judgment Approving Settlement (listing persons excluded from the Settlement Class) will be provided on or before January 10, 2025.

Further supporting final approval, Plaintiff's Counsel strongly endorse the Settlement. *See Wong*, 773 F.3d at 863. Lead Counsel BFA is highly experienced in litigating securities class actions (*see* ECF No. 55 at 11; Kubota Decl. ¶¶57-58), and Schall and Fegan Scott are also highly experienced in securities and other complex litigation. (*See* Ex. J (Schall Decl.) ¶3; Ex. I (Fegan Decl.) ¶3.) Because Plaintiff's Counsel are "experienced and skilled practitioners in the securities litigation field . . . their opinion that the [S]ettlement is fair, reasonable, and adequate also favors approval." *Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).

## III. THE PLAN OF ALLOCATION WARRANTS APPROVAL

Lead Plaintiff also respectfully requests that the Court approve the Plan of Allocation, set forth in the Long-Form Notice. (*See* ECF No. 99-3 at 23-30 of 31.) "The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation." *Retsky*, 2001 WL 1568856, at *3. !In securities class actions, the plan of allocation should "take[] into account factors such as when [settlement class members] purchased or sold [the company's] shares, . . . the price of [the company's] shares purchased or sold, as well as the artificial inflation or deflation of the price at the time of the trade." *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020).

Here, the Plan of Allocation does just that and is thus fair, reasonable, and adequate, warranting the Court's approval. The Plan of Allocation—developed by Lead Counsel with expert assistance—allocates each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Exicure common stock.

9

Specifically, Recognized Loss Amounts are calculated for each qualifying purchase or sale of Exicure common stock using estimates of artificial inflation at the time of each Settlement Class Member's purchase or sale. A claimant's Recognized Claim will be the sum of their Recognized Loss Amounts. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on their Recognized Claims in proportion to all Recognized Claims.

Thus, the proposed Plan of Allocation was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants based on estimates of recognized losses. The Plan of Allocation is comparable to plans approved in other securities class actions, including in this Court. *See, e.g.*, *Mortimer v. Diplomat Pharmacy, Inc.*, No. 1:19-cv-01735, ECF No. 151 (N.D. Ill. June 7, 2022) (Kness, J.) (approving plan of allocation that calculated recognized losses based on trade dates, prices, and artificial inflation or deflation at time of trade); *see also id.* ECF No. 135-1 at 8-14 (Diplomat Plan of Allocation).

## IV. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court preliminarily certified the Settlement Class based on preliminary findings that the Settlement Class satisfies all requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and Rule 23(b)(3) (predominance and superiority). (*See* ECF No. 103 ¶¶5-6.) The facts and circumstances supporting certification remain unchanged, and no Settlement Class Member has objected to certification. Accordingly, Lead Plaintiff respectfully requests that the Court finally certify the Settlement Class under Rules 23(a) and (b)(3), and finally appoint Lead Plaintiff as Settlement Class Representative, and Lead Counsel as Settlement Class Counsel, for purposes of the Settlement.

10

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this motion and enter the proposed (1) Final Judgment Approving Settlement, and (2) Order Approving Plan of Allocation.

Dated: December 9, 2024

By: */s/ Joseph A. Fonti*

Joseph A. Fonti (*pro hac vice*)
Evan A. Kubota (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, NY 10022
Tel.: (212) 789-1340
jfonti@bfalaw.com
ekubota@bfalaw.com

*Counsel for Lead Plaintiff James Mathew and Lead Counsel for the Class*

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Lead Plaintiff James Mathew*

Brian Schall (*pro hac vice*)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff James Mathew*

11