UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK COLWELL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXICURE, INC., DAVID A. GILJOHANN, BRIAN C. BOCK, and GRANT T. CORBETT, <br><br> Defendants. | Case No. 1:21-CV-06637 <br><br> Honorable John F. Kness |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND
<u>LEAD PLAINTIFF'S REASONABLE COSTS AND EXPENSES</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    THE FEE APPLICATION SHOULD BE APPROVED .................................................... 3

       A.    Counsel Is Entitled to a Fee Award from the Common Fund................................ 3

       B.    The Requested Fee Is a Reasonable Percentage of the Common Fund and
Consistent with Awards in Similar Cases in This Circuit....................................... 3

       C.    Other Factors Commonly Considered in This Circuit Also Support the
Requested Fee .................................................................................................... 5

            1.    The Significant Risk of Nonpayment Supports the Requested Fee............ 5

            2.    The Quality of Representation Drove Exceptional Results ........................ 8

            3.    The Time and Labor Expended Support the Requested Fee....................... 9

            4.    The High Stakes of This Complex Action Support the
Requested Fee ..................................................................................... 10

            5.    Lead Plaintiff and the Proposed Class Support the Requested Fee .......... 10

       D.    Though Unnecessary, a Lodestar Cross-Check Supports the Requested Fee....... 11

III.   THE EXPENSE APPLICATION IS REASONABLE .................................................... 13

IV.   LEAD PLAINTIFF'S COSTS AND EXPENSES ARE REASONABLE ....................... 13

CONCLUSION.......................................................................................................... 14

i

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Arenson v. Bd. of Trade of City of Chicago*,
372 F. Supp. 1349 (N.D. Ill. 1974) ................................................................................ 9

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ................................ 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................................................... 3

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ..................................................................... 4, 14

*Dobbs v. DePuy Orthopaedics, Inc.*,
885 F.3d 455 (7th Cir. 2018) .......................................................................................... 4

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) .......................................................................................... 3

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .......................................................................................... 4

*Gupta v. Power Sols. Int'l, Inc.*,
2019 WL 2135914 (N.D. Ill. May 13, 2019) ..................................................................... 4, 14

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-CV-660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................ 3, 5, 11

*In re Cenco Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ................................................................................... 12

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......................................................................................... 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .............................................................................. 3, 5, 6

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................................. 6

*In re Gohealth, Inc. Sec. Litig.*,
2024 WL 3647088 (N.D. Ill. May 22, 2024) ................................................................... 4

ii

*In re Groupon, Inc. Sec. Litig.*,
  2016 WL 3896839 (N.D. Ill. July 13, 2016)..........................................................4, 14

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)....................... 12

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................................................... 12

*In re Synthroid Marketing Litig.*,
  325 F.3d 974 (7th Cir. 2003) ........................................................................... 11

*Mathur v. Bd. of Trustees of S. Ill. Univ.*,
  317 F.3d 738 (7th Cir. 2003) ........................................................................... 12

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).......................................................................................... 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)........................................................................................... 7

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. C 19-04744 WHA, 2022 WL 816473 (N.D. Cal. Mar. 17, 2022) ................................... 12

*Skelton v. Gen. Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ............................................................................. 3

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ......................................................................... 4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).......................................................................................... 10

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  No. 14-cv-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)................................ 10

*Wong v. Accretive Health, Inc.*,
  2014 WL 7717579 (N.D. Ill. Apr. 30, 2014).................................................... 5, 10

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ............................................................................. 5

**STATUTES**

15 U.S.C. § 78u............................................................................................*passim*

## I.    INTRODUCTION

The Court has preliminarily approved the Settlement to resolve this securities class action in exchange for a cash payment of $5,625,000—an outstanding result given Exicure's financial constraints, the maximum theoretical damages, and the risks and delay of further litigation.[1]

Plaintiff's Counsel achieved the Settlement by meticulously investigating alleged misstatements concerning XCUR-FXN (Exicure's lead drug candidate) and Exicure's disclosure controls, and developing detailed scientific and technical allegations.[2]

However, there was no assurance of any recovery:  Defendants had significant arguments for dismissal, including by challenging Lead Plaintiff's allegations of scienter, especially as to Exicure, Giljohann, and Bock.  Compounding the risk, Exicure's financial condition continued to decline, with Exicure reporting just $528,000 in cash on hand as of June 30, 2024.[3]  Despite these risks, Plaintiff's Counsel invested 574.9 hours (or $525,862) of work on a fully contingent basis.

Lead Counsel Bleichmar Fonti & Auld LLP ("BFA") now respectfully seeks (a) an award of attorneys' fees in the amount of 30% of the Settlement Fund (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); (b) payment of litigation expenses in the amount of $77,281 (plus interest at the same rate and for the same period as earned

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement (the "Stipulation," ECF No. 99) and the Declaration of Evan A. Kubota in Support of (I) Lead Plaintiff's Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Reasonable Costs and Expenses, submitted herewith (the "Kubota Declaration").  Citations to "Ex." refer to the exhibits to the Kubota Declaration.  Emphasis is added, and citations omitted, unless otherwise noted.

[2] "Plaintiff's Counsel" refers collectively to Lead Counsel BFA, local counsel Fegan Scott LLC ("Fegan Scott"), and additional counsel The Schall Law Firm ("Schall").

[3] *See* Exicure Form 10-Q, dated Aug. 13, 2024, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001698530/000169853024000089/xcur-20240630.htm.

by the Settlement Fund, until paid); and (c) an award of $6,000 to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4).

First, the requested 30% fee is reasonable, comparable to fee percentages awarded in this Circuit and nationally, and supported by the other factors courts regularly consider.

Perhaps the most important factor is the outstanding result Plaintiff's Counsel achieved for the benefit of the Settlement Class. By developing compelling and detailed allegations, Plaintiff's Counsel achieved a Settlement that recovers over 22% of maximum damages—more than four times higher than the 4.5% average recovery in Section 10(b) settlements nationwide. (*Infra* at 8.) As importantly, Plaintiff's Counsel achieved this result efficiently—particularly important given Exicure's distressed financial condition and potential bankruptcy if litigation had continued.

As to comparable fee awards, fees of 30% or higher have regularly been awarded in securities class actions in this District and Circuit. (*Infra* at 3-5.) Nationally, the requested fee tracks the median fee of 30% in securities class settlements of comparable size. (*Infra* at 5.)

Other relevant factors also support the requested fee, including the risk of nonpayment; the quality of representation; the substantial time and labor expended by counsel; the high stakes of this action; and the support of Lead Plaintiff and the Class. (*Infra* at 5-12.)

Second, the requested reimbursement of $77,281 in litigation expenses is reasonable because these expenses were necessarily incurred to develop the allegations of this complex and technical case, which required Plaintiff's Counsel to oversee an exhaustive investigation, analyze damages with expert assistance, and conduct a lengthy mediation process.

Finally, the requested award to Lead Plaintiff of $6,000 is reasonable, consistent with the PSLRA's provision for "awards of reasonable costs and expenses (including lost wages) directly

2

relating to the representation of the class," 15 U.S.C. § 78u-4(a)(4), and will compensate Lead Plaintiff for the time he devoted to this action on behalf of the Settlement Class.

## II. THE FEE APPLICATION SHOULD BE APPROVED

### A. Counsel Is Entitled to a Fee Award from the Common Fund

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine . . . is based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988). Thus, "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994).

### B. The Requested Fee Is a Reasonable Percentage of the Common Fund and Consistent with Awards in Similar Cases in This Circuit

In this District, the "favored method for calculating fees in common-fund cases . . . sets the fee award as a percentage of the recovered settlement fund, plus expenses and interest." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015).

The percentage method has the advantage of aligning counsel's interests with those of the class and may be particularly suitable for common fund cases "because of its relative simplicity of administration." *Florin*, 34 F.3d at 566. Thus, the "percentage method is employed by the vast majority of courts in the Seventh Circuit." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-CV-660, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (internal quotations omitted).

Here, Lead Counsel requests a fee of 30% of the Settlement Fund. The requested fee is reasonable given that the "typical contingent fee is between 33 and 40 percent," *Dobbs v. DePuy*

3

*Orthopaedics, Inc.*, 885 F.3d 455, 459 (7th Cir. 2018) (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)), and supported by the fee percentages regularly awarded in other securities class actions in this District and Circuit.

For example, in *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005), the Seventh Circuit affirmed a 30% fee award in a $7.25 million securities settlement, noting that the district court had properly "considered awards made by courts in other class actions" in the range of 30% to 39%, along with other factors, such as "the quality of legal services rendered and the contingent nature of the case," yielding "a significant degree of risk of nonpayment." As discussed below, those same factors support Lead Counsel's request for a 30% fee here.

Similarly, courts in this District have regularly approved fees of 30% or higher in securities class action settlements. *See, e.g.*, *In re Gohealth, Inc. Sec. Litig.*, 2024 WL 3647088, at *1 (N.D. Ill. May 22, 2024) (awarding 30% fee in $29.25 million securities settlement); *Pierrelouis v. GoGo Inc.*, No. 1:18-cv-04473, ECF No. 165 (N.D. Ill. Oct. 13, 2022) (awarding 33.3% fee in $17.3 million securities settlement); *Lowry v. RTI Surgical Holdings, Inc.*, No. 1:20-cv-01939, ECF No. 111 (N.D. Ill. Jan. 26, 2022) (awarding 30% fee in $10.5 million securities settlement); *Gupta v. Power Sols. Int'l, Inc.*, 2019 WL 2135914, at *1 (N.D. Ill. May 13, 2019) (awarding 33.3% fee in $8.5 million securities settlement); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% fee in $45 million securities settlement); *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, ECF No. 130 (N.D. Ill. July 22, 2015) (awarding 33% fee in $9.75 million securities settlement); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (awarding

4

30% fee in $60 million securities settlement); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (awarding 30% fee in $14 million securities settlement).[4]

The requested 30% fee is also consistent with national data: specifically, median fee awards in comparably sized settlements. Research by NERA Economic Consulting has found that in securities class action settlements between $5 million and $10 million from 2014-2023, the median fee award was 30%, matching Lead Counsel's request here.[5]

This authority demonstrates that the requested 30% fee is consistent with the fee percentages awarded in similar class actions.

## C. Other Factors Commonly Considered in This Circuit Also Support the Requested Fee

In evaluating fee requests, courts in this Circuit also consider factors such as "(1) the risk of nonpayment a firm agrees to bear," "(2) the quality of [counsel's] performance," "(3) the amount of work necessary to resolve the litigation," "(4) the stakes of the case," and (5) the complexity, length and expense of the litigation. *Dairy Farmers*, 80 F. Supp. 3d at 844; *see generally AON Corp.*, 415 F.3d at 599. As detailed below, each of these factors supports Lead Counsel's fee application.

### 1. The Significant Risk of Nonpayment Supports the Requested Fee

Plaintiff's Counsel undertook this representation on a fully contingent basis—and, in doing so, shouldered "a significant degree of risk of nonpayment." *AON Corp.*, 415 F.3d at 600

---

[4] It is appropriate to award fees as a percentage of the gross settlement fund (*i.e.*, before deducting any expense award and other costs). *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (noting that "district court awarded attorneys' fees of 30% of the [$14 million] settlement proceeds, or $4.2 million"); *State Farm*, 2018 WL 6606079 at *13 ("Courts in this Circuit routinely award a percentage of the gross common fund without netting out separately awarded costs, and this Court sees no reason to depart from that approach here.").

[5] Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review*, NERA, at 29 (Jan. 23, 2024).

("contingent nature of the case" supported 30% fee). Thus, unlike defense counsel—who are paid regularly on an hourly basis, regardless of the result—Plaintiff's Counsel stood to obtain compensation only in the event of a successful outcome.

But there was no guarantee of success. Securities class actions governed by the PSLRA are complex and subject to heightened pleading standards. Those risks were heightened by the complex and unusual facts of this case and the real prospect that Exicure would not even survive the litigation, much less retain assets to pay a judgment.

First, Plaintiff's Counsel developed compelling allegations through independent research and investigation. The complex scientific and technical issues in this case required extensive research and analysis concerning (among other things) neurological diseases, drug development, FDA data integrity regulations, scientific publications, and Exicure's SEC filings and other public disclosures. That work was paired with a wide-ranging investigation to contact former Exicure scientists and other former employees with knowledge of the relevant events. And in undertaking this work, Plaintiff's Counsel could not simply ride the coattails of a "prior criminal or civil proceeding involving the same parties or subject matter." *Dairy Farmers*, 80 F. Supp. 3d at 848. The absence of a prior proceeding or government investigation of Exicure heightened the risk and challenge of independently prosecuting this case, supporting the requested fee. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("complexity of the litigation and the fact that the plaintiffs did not bring this case as a tag-along suit to a government investigation" justified "the substantial attorneys' fees award").

Second, Lead Plaintiff faced a high burden to plead claims under the PSLRA, requiring him to allege "with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Notably, more than half—approximately 54%—of motions to dismiss are

6

granted in securities class actions.[6]  Here, although Plaintiff's Counsel invested significant effort to develop the detailed allegations, such that Defendants agreed to settle before moving to dismiss, a successful motion could have ended the case and foreclosed any recovery.

Third, although Lead Plaintiff and Plaintiff's Counsel believe the claims asserted are meritorious, Lead Plaintiff and the Class faced numerous case-specific risks in proving liability.

For example, had litigation continued, Defendants would have vigorously disputed scienter.  Defendants Exicure, Giljohann, and Bock likely would have argued that they acted in good faith and without knowledge of the alleged falsity of the XCUR-FXN data or the alleged deficiencies in Exicure's disclosure controls, citing Exicure's internal investigation and its conclusions (*see* ECF No. 61 ¶308), and argued that Defendant Corbett's alleged scienter cannot be imputed to them.  Defendants may also have argued that any alleged misstatements are non-actionable opinions under the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).  These arguments posed substantial risks.  Further, Exicure, Giljohann, and Bock likely would have painted themselves as victims of Corbett, and far from the deliberate perpetrators of a securities fraud—arguments that could well have persuaded a jury, or the Court, to rule in their favor.

Fourth, apart from the merits risks, Exicure's distressed financial position presented serious risks that the Company would not survive further litigation.  Exicure reported that as of June 30, 2024, it had liabilities exceeding $9 million and a cash balance of just $528,000.[7]  Further, Exicure warned investors that "there is substantial doubt about the Company's ability to continue as a going

---

[6] *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review*, NERA, at 16 (Jan. 23, 2024).

[7] *See* Exicure Form 10-Q, dated Aug. 13, 2024, *available at* https://www.sec.gov/ix?doc =/Archives/edgar/data/0001698530/000169853024000089/xcur-20240630.htm.

7

concern," and that Exicure "may need to seek bankruptcy protection in the near term." (*Id.*) If litigation had continued, Lead Plaintiff would have had to obtain class certification, complete discovery, prevail at summary judgment and trial, and defeat the ensuing appeals. This could take years, magnifying the risk that Exicure's financial condition could further worsen over the intervening period.

Despite these significant risks of recovering nothing, Plaintiff's Counsel invested over 570 hours and $77,281 in expenses, on a fully contingent basis, to secure the proposed Settlement for the Settlement Class. This investment of time and resources, in the face of substantial risks, strongly supports the requested fee.

### 2. The Quality of Representation Drove Exceptional Results

An important factor in evaluating the quality of representation is the result achieved. Here, the proposed Settlement provides for a cash recovery of $5.625 million, or over 22% of maximum estimated damages (approximately $25 million). The 22% recovery is more than four times higher than the 4.5% average recovery in Section 10(b) cases between 2014-2023[8]—an exceptional result even before considering Exicure's material financial constraints and the significant case-specific risks outlined above.

The result achieved in this challenging case reflects Plaintiff's Counsel's experience and skill: Lead Counsel has extensive experience prosecuting securities class actions, as does Schall as additional counsel for Lead Plaintiff (who performed work under Lead Counsel's direction and supervision), and Fegan Scott has significant experience in class action litigation. (Kubota Decl.

---

[8] *See* Cornerstone Research, *Securities Class Action Settlements – 2023 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

¶¶57-58; Ex. J (Schall Decl.) ¶3; Ex. I (Fegan Decl.) ¶3.) Plaintiff's Counsel marshalled this considerable experience and skill in successfully prosecuting and resolving this Litigation.

In addition, the quality of opposing counsel is a relevant factor in evaluating Plaintiff's Counsel's work. *See Arenson v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Here, Plaintiff's Counsel faced formidable opposing counsel at Baker Hostetler and Jones Day. Plaintiff's Counsel's ability to achieve a highly favorable settlement against this skilled opposition further supports the requested fee.

### 3. The Time and Labor Expended Support the Requested Fee

Plaintiff's Counsel's investment of time and labor on a fully contingent basis supports the requested fee. To prosecute the Action, Plaintiff's Counsel devoted 574.9 hours, amounting to $525,862 in attorney and staff time.[9] (Kubota Decl. ¶39.)

This extensive work—detailed in the Kubota Declaration—included investigating and drafting the Second Amended Complaint (ECF No. 61), which included complex scientific and technical allegations regarding the development of XCUR-FXN and FDA data integrity regulations, as well as allegations to counter Defendants' anticipated arguments on falsity and scienter. (Kubota Decl. ¶¶10-20.) These strategic efforts positioned Plaintiff's Counsel to secure a highly favorable resolution for the Settlement Class after an arm's-length mediation process that spanned more than six months. (*Id.* ¶¶21-30.)

Importantly, Plaintiff's Counsel worked as efficiently as possible. A core team of three attorneys accounted for the vast majority (75%) of time, which was largely concentrated on (1) investigating and drafting the Second Amended Complaint, and (2) the lengthy mediation

---

[9] Plaintiff's Counsel has excluded all time concerning fee and expense award matters from these calculations.

process.    (Kubota Decl. ¶48.)    This high-value work led directly to the Settlement's significant recovery.

### 4.    The High Stakes of This Complex Action Support the Requested Fee

The high stakes of this securities action—with numerous Settlement Class members and estimated maximum damages of approximately $25 million—further support the requested fee. Indeed, for Exicure, this litigation was essentially a bet-the-company matter:  as the alleged scheme unraveled, Exicure's share price plunged 76%, CEO Giljohann departed, and Exicure abandoned XCUR-FXN, which left it with no products or ongoing R&D (ECF No. 61 ¶¶24-28, 149-154).

Public policy considerations also support the requested fee.  The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Moreover, Lead Plaintiff believes that Defendants' alleged conduct caused Exicure shareholders to suffer significant losses, which can only be remediated in this class action, and this action concerns an issue of public concern—statements to investors about a purported miracle drug for a fatal disease.  The proposed settlement sends an important message about ensuring the integrity of the securities markets and that companies accurately report data on new drugs.

### 5.    Lead Plaintiff and the Proposed Class Support the Requested Fee

Further supporting the requested fee, the requested fee percentage is memorialized in Lead Plaintiff's retention agreement with counsel.  (Ex. A (Mathew Decl.) ¶10.)  "Courts have found that *ex ante* fee agreements between lead counsel and lead plaintiffs enjoy a presumption of reasonableness under the PSLRA."  *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-cv-8925 (KMW), 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017); *see also Wong*, 2014 WL 7717579

at *1 (noting that "the requested fee is consistent with percentage fees negotiated *ex ante* in the private market for legal services"). Lead Plaintiff supports the requested fee, recognizing the effort Plaintiff's Counsel has expended to achieve an excellent result for the Settlement Class. (Ex. A (Mathew Decl.) ¶11.)

The reaction of the Settlement Class also supports the requested fee. After the dissemination of 8,166 notices and publication of notice online and in *Investor's Business Daily* (Ex. E (Kimball Decl.) ¶¶11, 13, 18), advising that Lead Counsel would apply for attorneys' fees of up to 30% of the Settlement Fund, plus expenses not to exceed $110,000, to date, there have been no objections (Kubota Decl. ¶37). This strongly favors approval. *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (lack of "any meaningful number of objections" to fee and expense request indicated "the Class's overwhelming support").

### D. Though Unnecessary, a Lodestar Cross-Check Supports the Requested Fee

Finally, given the reasonable fee percentage and other factors above, a lodestar cross-check is unnecessary. "A lodestar cross-check is not required in this Circuit," *State Farm*, 2018 WL 6606079 at *7, and the "use of a lodestar cross-check has fallen into disfavor." *Beesley*, 2014 WL 375432 at *3 (citing *In re Synthroid Marketing Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003)).

Nonetheless, a lodestar cross-check also supports the reasonableness of the requested fee.

To start, the hourly rates of Plaintiff's Counsel are appropriate. BFA's rates have been accepted by other courts (Kubota Decl. ¶46), and Plaintiff's Counsel's rates are reasonable in light of rates approved in other securities class actions in this District and nationally. *See Bilinsky v. Gatos Silver, Inc.*, No. 1:22-cv-00453-PAB-KAS, ECF Nos. 91-7 & 97 (D. Colo. Oct. 15, 2024); *see also* Settlement Approval Hearing Transcript, *In re Teva Sec. Litig.*, No. 3:17-cv-00558 (SRU) (D. Conn.) (June 2, 2022), 28-29 (granting fee request and accepting BFA's rates); *Police Ret. Sys.*

11

*of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at \*9 (N.D. Cal. Mar. 17, 2022) ("This order accepts [BFA's] claimed rates as generally tracking the going rate for those with the same levels of skill and experience in our geographic region.").[10]

Plaintiff's Counsel's lodestar is $525,862, and the requested fee award ($1.6875 million before interest) yields a 3.21 multiplier. This multiplier is reasonable and reflects the significant risk of non-payment, as well as "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation," as detailed herein. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Comparable or higher multipliers have been awarded in this District and around the country. *See, e.g.*, *Lowry*, No. 1:20-cv-01939, ECF Nos. 111 & 115 (N.D. Ill. Jan. 26, 2022) (awarding 3.10 multiplier in $10.5 million securities settlement); *Pierrelouis*, No. 1:18-cv-04473, ECF No. 165 (N.D. Ill. Oct. 13, 2022) (awarding 2.35 multiplier in $17.3 million securities settlement); *In re Household Int'l Inc. ERISA Litig.*, No. 1:02-cv-07921, ECF No. 141 (N.D. Ill. Nov. 22, 2004) and ECF No. 139 at 25 of 32 (awarding 4.65 multiplier in $46.5 million ERISA settlement); *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) (awarding 4 multiplier in $19.25 million securities settlement); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at \*16 (S.D.N.Y. July 21, 2020) ("lodestar multipliers between 2 and 5 are commonly awarded"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases.").

---

[10] Plaintiff's Counsel have used current rates to account for inflation and the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744–45 (7th Cir. 2003) ("We have allowed district courts to use either current rates or past rates with interest when calculating the lodestar amount . . . .").

12

The multiplier also reflects that Plaintiff's Counsel worked efficiently to resolve this action promptly—especially important given Exicure's distressed financial condition—and achieved an exceptional result that both compensates the Settlement Class and vindicates the important public interest in enforcing the federal securities laws.

## III. THE EXPENSE APPLICATION IS REASONABLE

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the common fund. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Here, Lead Counsel seek reimbursement of $77,281 (plus interest) for litigation expenses incurred in prosecuting the action, including fees related to an investigator; consulting experts (to analyze damages); mediation fees; and legal research, service and filing fees. The expenses, which are of the type routinely reimbursed in similar actions, are described in detail in Lead Counsel's declaration. (Kubota Decl. ¶¶61-65.) Notably, the requested expense reimbursement of $77,281 is well below the $110,000 set forth in the Notice, and no Class member has objected to that amount, further supporting the reasonableness of the expenses.[11] The requested expenses are reasonable and should be awarded. *See, e.g.*, *Busic v. Orphazyme A/S*, No. 1:21-cv-03640, ECF No. 85 (N.D. Ill. Feb. 7, 2024) (Kness, J.) (awarding $73,827 in expenses).

## IV. LEAD PLAINTIFF'S COSTS AND EXPENSES ARE REASONABLE

Finally, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), Lead Plaintiff seeks an award "of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" in the amount of $6,000. The requested award reflects the time Mr. Mathew devoted to

---

[11] In addition to the expenses that are the subject of this motion, up to $100,000 of Notice and Administration Expenses are payable from the Settlement Fund before the Effective Date (ECF No. 99 ¶2.9), while any additional amount will be paid after the Effective Date.

overseeing this Action at a reasonable hourly rate. Specifically, Mr. Mathew devoted approximately 30 hours to overseeing the litigation, including conferring with Plaintiff's Counsel, reviewing documents, and participating in the decision to settle. (Ex. A (Mathew Decl.) ¶¶5, 14.) Lead Plaintiff's diligent representation of the Settlement Class warrants the requested award, which is reasonable and comparable to amounts awarded in other actions. *See, e.g.*, *Orphazyme*, ECF No. 85 (awarding $7,500 to lead plaintiff); *Power Sols. Int'l*, 2019 WL 2135914 at *2 (awarding $5,000 to lead plaintiff and $5,000 to named plaintiff); *Groupon*, 2016 WL 3896839 at *5 (awarding class plaintiffs $5,000 each); *Hospira*, 2014 WL 12767763 at *1 (awarding plaintiffs $9,487.50, $6,572, $6,000, and $3,125, respectively).

## CONCLUSION

Lead Counsel respectfully requests that the Court grant this motion and enter the proposed order submitted herewith, providing for: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus interest at the same rate and for the same period as earned by the Settlement Fund (until paid); (ii) reimbursement of litigation expenses in the amount of $77,281, plus interest at the same rate and for the same period as earned by the Settlement Fund (until paid); and (iii) an award of $6,000 to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4).

Dated: December 9, 2024

By: */s/ Joseph A. Fonti*

Joseph A. Fonti (*pro hac vice*)
Evan A. Kubota (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, NY 10022
Tel.: (212) 789-1340
jfonti@bfalaw.com
ekubota@bfalaw.com

14

*Counsel for Lead Plaintiff James Mathew and Lead Counsel for the Class*

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
beth@feganscott.com

*Local Counsel for Lead Plaintiff James Mathew*

Brian Schall (*pro hac vice*)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff James Mathew*

15