UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK COLWELL, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

v.

EXICURE, INC., DAVID A. GILJOHANN,
BRIAN C. BOCK, and GRANT T. CORBETT,

Defendants.

Case No. 1:21-CV-06637

Honorable John F. Kness

## ORDER APPROVING SETTLEMENT DISTRIBUTION

Lead Plaintiff James Mathew ("Plaintiff"), on behalf of himself and each member of the Settlement Class, moved this Court for an order granting the Motion to Approve Settlement Distribution in the above-captioned class action (the "Litigation"). Having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement (the "Stipulation") (ECF No. 99), and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all Parties to the Litigation, including all Members of the Settlement Class.

3.      The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), to accept

- 1 -

the claims deemed acceptable in whole or in part, listed in Exhibits B-1 and B-2 to the Kimball Declaration, are adopted.

4. The Claims Administrator's administrative recommendations to reject the claims that Epiq has wholly rejected, listed in Exhibit B-3 to the Kimball Declaration, are adopted.

5. The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") as set forth in the Kimball Declaration is APPROVED. Accordingly:

(a) Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, as follows:

(i) Epiq will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation.

(ii) Epiq will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund, as calculated under subparagraph (a)(i) above, is less than $10.00. Such claimants will not receive any distribution from the Net Settlement Fund and Epiq will send letters to those Authorized Claimants advising them of that fact.

(iii) After eliminating claimants who would have received less than $10.00, Epiq will calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph (a)(i) above ("Distribution Amount").

(iv)    In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE."

(v)    Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants in the Second Distribution as discussed below. Similarly, Authorized Claimants who do not cash their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

(b)    After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). The Second Distribution will include any unclaimed amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees. These remaining funds will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and would receive at least $10.00 from the Second Distribution based on their *pro-rata* share of the remaining funds.

(c)    In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

(i)      If cost effective, Epiq will conduct a further distribution of the Net Settlement Fund, in which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Settlement (including the estimated costs of such distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to Authorized Claimants who cashed their Second Distribution checks in an equitable and economic fashion.  Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. At that point, and as set forth in the Stipulation of Settlement, the residual balance will be donated to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel.

6.      Epiq is directed to reject without further notice any new Claims, documentation to cure previously defective claims, or further adjustments to Claims that would result in an increased Recognized Claim Amount that are received after July 24, 2025.

7.      All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxations of the Net Settlement Fund, including Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agents and any other agent designated by Lead Counsel, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members are barred from making any further claim against the Net Settlement Fund or the Released Parties, including the entities named in this Paragraph.

- 5 -

8.    The Claims Administrator's fees and expenses for its work in connection with the administration of the Settlement (including estimated fees and expenses to conduct the Initial Distribution) are approved, and Lead Counsel is directed to pay the Claims Administrator $118,217.49 out of the Settlement Fund.

IT IS SO ORDERED.

DATED: 7/25/2025

BY THE COURT:

_____

Judge John F. Kness